**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

CHRISTOPHER POLK,
*individually, and on behalf of all others*
*similarly situated*,

        Plaintiff,

v.                                                                          CASE NO:

DEL GATTO INC.,

        Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Christopher Polk, on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to himself, upon information and belief, and the investigation of his counsel as to all other matters, and bring this class action against Defendant Del Gatto Inc. ("Del Gatto"), as follows:

### I.      Nature of the Action

1.      Although precious stones and jewelry are routinely sold as worthy investments, jewelry owners often struggle with selling their prized possessions in exchange for cash. Potential buyers are often scared off by fears of fraud or bait-and-switch. Jewelry owners therefore are often forced to sell to pawn shops or other smaller entities, and often for only cents on the dollar of the actual worth of the stone. Engagement rings can be even more difficult to sell for fair value with the significant emotional stigma associated with a failed engagement or marriage.

2.      Defendant Del Gatto sought to capitalize on this niche market and launched a business described as an online consumer-to-consumer jewelry marketplace. On its marketplace,

individuals can sell jewelry to willing buyers only after Del Gatto has validated the authenticity of the goods being sold. Buyers are therefore assured that the products are authentic and worthy of the purchase price.

3.      Del Gatto routinely markets to jewelry owners who are heartbroken, financially strapped, or otherwise struggling to liquify their jewelry into cash.

4.      To alleviate concerns about online diamond and jewelry sales, Del Gatto expressly advertises and promises in its contract that it will pay the seller on the fifteenth (15th) day of every month for all items sold between the first and last day of the previous month. (Exhibit A.[1])  For example, all payments issued on February 15th would cover any items sold and passed during January 1st- January 31st. The contract also specifies that all payments will be sent by check via USPS.[2] Despite this contractual obligation, Del Gatto routinely fails to make timely payments to sellers and unlawfully retains both the jewelry and the cash payments from Plaintiff and Class Members.

5.      Every time Del Gatto fails to pay by the fifteenth day of the month, the company is expressly in breach of its own contractual language. But even worse, Del Gatto often fails to pay consumers for at least several *months* after the sale.

6.      For example, Plaintiff's diamond engagement ring went through Del Gatto's authentication process and was sold to a third party in June 2020. Del Gatto therefore received payment for Plaintiff's ring in June 2020, and on information and belief delivered the ring to the buyer in July 2020. Under Del Gatto's contractual terms, payment should have been made to Plaintiff on August 15, 2020. To this day, though, Plaintiff has yet to receive any payment from Del Gatto, despite repeated requests for payment.

---

[1] https://www.idonowidont.com/terms-conditions (last accessed on Jan. 5, 2021).
[2] *Id.*

7.     Online complaints echo Plaintiff's own experience, as detailed throughout this Complaint. Del Gatto has held onto jewelry and/or payments for months without paying sellers as obligated under its own contractual requirements.

8.     Del Gatto has foully used COVID-19 as delay tactic, explaining that it cannot complete payments. This excuse rings hollow. Del Gatto's operations have moved apace during this pandemic, with no delays in collecting payment from buyers or authenticating jewelry for sale. Conveniently, Del Gatto has only relied on COVID-19 as a reason for months-long delays when it comes time to pay the sellers like Plaintiff and the class. Considering the online nature of Del Gatto's business and the ease of processing electronic payments, there simply is no reason for such delays.

9.     This is a simple case of Del Gatto charging, collecting, and unlawfully retaining monies owed to Plaintiff and Class Members for the sale of their property through Del Gatto's website. Plaintiff and the putative class members have experienced a classic bait-and-switch where Del Gatto processes jewelry transactions throughout a pandemic but fails to pay out the proceeds to the rightful owners. A class action is therefore appropriate since Del Gatto's unlawful business practices impact sellers located throughout the United States in violation of New York General Business Law § 349. Plaintiff seeks damages and other remedies for himself and all others similarly situated, as further defined below.

## II.     Jurisdiction and Venue

10.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Del Gatto's states of citizenship,

Delaware and New York. This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Del Gatto is a corporation subject to personal jurisdiction in this District and is therefore deemed to reside in this District for the purposes of venue. Del Gatto's Terms of Use contract, to which Plaintiff is a party, states, "You hereby submit to personal jurisdiction by and venue in the state and federal courts of the State of New York, City of New York."

12.     This Court possesses personal jurisdiction because Del Gatto regularly conducts business, marketing, distributing, promoting and/or selling, either directly or indirectly from its principal office located in New York, New York. The proceeds from the sales at issue are believed to be located in the state of New York.  Del Gatto has obtained the benefits of the laws of New York and profited handsomely from New York commerce.

### III.     The Parties

13.     Plaintiff Christopher Polk was and is an individual resident and citizen of Florida, at all times relevant to this action.

14.     Defendant Del Gatto Inc. is a Delaware corporation, which operates from its corporate headquarters located at 16 East 52nd Street, New York, New York.

### IV.     Factual Allegations

#### A.     Del Gatto's Business Model

15.     Del Gatto operates its website called "I Do Now I Don't" with a URL of http://www.idonowidont.com. The website facilitates the resale of engagement rings or other jewelry through an online marketplace, with Del Gatto authenticating the items, processing payments from buyers, and paying out the proceeds to sellers.  Josh and Mara Opperman founded

4

the business in 2007 after Josh could not find a good place to sell his engagement ring when his engagement ended.[3]

16.     In or around September 2015, Chris Del Gatto, one of the largest buyers of previously-owned diamonds, fine jewelry, and watches, launched a new company named Del Gatto, Inc., which purchased a majority stake in "I Do Now I Don't" (collectively "Del Gatto").

17.     As part of the merger, Del Gatto retained the "I Do Now I Don't" website (www.idonowidont.com) and trademark but still legally conducts business as Del Gatto.

18.     After the merger, Del Gatto estimated that its revenues would exceed $15 million in 2015.[4]

19.     Since Del Gatto's investment in I Do Now I Don't, the company expanded its services beyond an engagement ring platform, instead servicing all types of jewelry. Del Gatto now boasts that it is "the largest jewelry buyer from the public" with "the largest secure secondhand online diamond inventory," along with "a proven safe and secure buying process" for a "global reach [that] gives us demand for all types of jewelry."[5] Del Gatto's primary business slogan is "BUY WISELY, SELL WISELY."[6]

20.     Del Gatto promotes its consumer marketplace as a safe way for consumers to buy and sell used jewelry, and it simultaneously warns that consumers should avoid all transactions outside its marketplace: "please be aware that facilitating transactions with Buyers or Sellers outside of the secure IDNID platform may result in fraud."[7]

---

[3] https://www.idonowidont.com/press/chris-delgattos-new-venture-merges-i-do-now-i-don%E2%80%99t (last accessed on Jan. 5, 2021).
[4] *Id.*
[5] https://www.idonowidont.com/terms-conditions (last accessed on Jan. 5, 2021).
[6] https://www.idonowidont.com/ (last accessed on Jan. 5, 2021).
[7] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).

B.      **Del Gatto's Terms of Use Contract with Sellers**

21.     Del Gatto requires all customers (buyers and sellers) to agree to its "Terms of Use"

contract. The Terms of Use do not vary from state to state.

22.     There are two ways consumers can sell their products using Del Gatto's services:

(1) through the marketplace (where a consumer markets and resells the product to another

consumer), and (2) directly to Del Gatto (who will then resell the item itself).

23.     Del Gatto processes payments to sellers by a certain time depending on whether the

sale was direct or through the marketplace. Paragraph 9 of Del Gatto's Terms of Use, entitled "If

You Are a Seller," states:

> Payments for all direct purchases or marketplace sales are issued on the 15th of
> every month for any items that have sold and passed authentication from the first
> day to the last day of the month prior. For example, all payments issued on February
> 15th would cover any items sold and passed during January 1st- January 31st. All
> payments will be sent by check via USPS. For Marketplace sales, the payment
> timeline begins once the item is received in-house and authenticated. For Direct
> Offers and VIP sales, the payment timeline begins once the Purchase Form has been
> signed.[8]

24.     Paragraph 4 of the Terms of Use, entitled "Sale/Purchase Process," sets forth a

commission structure on marketplace sales depending on the value of the sale:

| Range of sale price | Commission |
|---|---|
| $500 - $5,000 | 20% of the sale price |
| $5,001 - $10,000 | 18% of the sale price |
| $10,001 - $50,000 | 15% of the sale price |
| $50,000 + | 10% of the sale price |
| VIP Service[9] | 25% of the sale price |

C.      **The Selling Process**

25.     Del Gatto markets its "Selling Process" as having four parts in its online marketing

---

[8] https://www.idonowidont.com/terms-conditions (last accessed on Jan. 5, 2021).
[9] The VIP Service is available to buyers and sellers via a full service jewelry concierge, including, free insured shipping, jewelry cleaning, wholesale discounts for buyers, photographing jewelry, listing items on marketplace, managing inquiries, etc.

materials, with the first step as follows:

> Registering to list an item on our Marketplace is FREE. All you need to do is create an account. Only if your item is sold will you be charged a commission. If you are not sure what price to list your piece for or want a Direct Offer on your item(s) you can request both. Simply email experts@del-gatto.com with a brief description of your item and photos if available. One of our buyers will respond to you with a direct Offer for your item(s) as well as a suggested listing price for your item(s).[10], [11]

26.     The second step of the 4-step selling process is List Your Item:

> Sellers will be given two estimates one for Direct Offer, and another that is a suggested listing price for our online Marketplace, I Do Now I Don't. Once items have been listed, sellers can choose between the Direct Offer, Listing or combination of both. If you choose to list, each new listing will automatically expire after 30 days.  If your piece has not sold during the 30 day period, you can renew your listing FREE of charge.[12], [13]

27.     The third step of the 4-step selling process is "Check Your E-Mail for Offers":

> Remember to regularly check your e-mail for offers or questions from prospective buyers. As soon as your item(s) has sold on our Marketplace you will receive an email confirmation. *Please be aware that facilitating transactions with Buyers and Sellers outside of the secure IDNID platform may result in fraud.[14],[15]*

28.     The fourth and final step of the 4-step selling process is Receive Payment:

> Payments for all direct purchases or marketplace sales will be issued on the 15th of every month for any items that have sold from the first day to the last day of the month prior. For example, all payments issued on February 15th would cover any items sold during January 1st – January 31st. All payments will be sent by check via USPS.

> We only have ONE official mailing address:

> I Do Now I Don't
> 15 West 47th Street Suite 1000
> New York, NY 10036[16][17]

---

[10] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).
[11] https://www.youtube.com/watch?v=Kuz0PuJiegE (last accessed on Jan. 5, 2021).
[12] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).
[13] https://www.youtube.com/watch?v=Kuz0PuJiegE (last accessed on Jan. 5, 2021).
[14] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).
[15] https://www.youtube.com/watch?v=Kuz0PuJiegE (last accessed on Jan. 5, 2021).
[16] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).
[17] https://www.youtube.com/watch?v=Kuz0PuJiegE (last accessed on Jan. 5, 2021).

29.     Nowhere in Del Gatto's marketing materials does the company disclose any circumstances that would delay or withhold payments to marketplace sellers.

30.     Instead, Del Gatto's website proclaims that its marketplace offers consumers "unprecedented value" when it comes to seller pricing, and that "typically sellers receive between 50-75% of the retail price for their item. Far better than retailers, Diamond or Jewelry Buyers, Auction Houses, or Pawn Shops can pay."[18]

31.     Del Gatto's website also compares its consumer marketplace to other used jewelry marketplaces and states that its marketplace is the only one to make "direct offers," on "all types of jewelry, diamonds, and watches," and verify sellers jewelry using a "third party appraisal included with every purchase."[19]



|  | DELGATTO IDONOWIDONT | THE REALREAL | TRUE FACET | TRADITIONAL AUCTION HOUSES |
|---|---|---|---|---|
| HOW LONG DOES IT TAKE FOR MY ITEM TO SELL | Direct Offer- Immediate - IDNID Marketplace-1-2 weeks on average | Typically takes 10-15 days just to have your item listed. This time doesn't include the sale of your item. | True Facet requires that you allow them 180 days to sell your item | Typically 3-4 month average |
| ACCEPTED ITEMS OR ELIGIBLE ITEMS | All types of jewelry, diamonds, watches | Contemp. signed pieces only and items < 10 years old. | Mainly branded/signed pieces | Typically very high end pieces only |
| OPTIONS | Direct Offer and Marketplace | Marketplace only | Marketplace only | Auction Only |
| THIRD PARTY APPRAISAL | Included with Purchase | ✕ | ✕ | ✕ |

---

[18] https://www.idonowidont.com/how_it_works#how-to-sell (last accessed on Jan. 5, 2021).
[19] *Id.*

**D.      Plaintiff Contracted With Del Gatto to Sell His Engagement Ring**

32.     In October 2018, Plaintiff purchased an engagement ring from Tiffany's for approximately $6,500. Shortly after the engagement, Plaintiff and his fiancé separated, and he decided to sell the engagement ring rather than hold onto it.

33.     In late 2019 and early 2020, Plaintiff thoroughly researched and reviewed Del Gatto's marketing materials and website to determine whether he would sell his ring through Del Gatto's marketplace. Plaintiff was attracted to Del Gatto's simple payment processing for sellers, the contractual obligation to pay sellers out by the following month (minus a reasonable commission), and Del Gatto's claim that it would be far superior to other jewelry marketplaces. At no point did Plaintiff know or anticipate that Del Gatto would fail to pay him for the sale of his ring.

34.     But for Del Gatto's deceptive and inaccurate website marketing, Plaintiff would have never sold his engagement ring through Del Gatto's online marketplace. Plaintiff relied on Defendant's marketing, seller processing, commission structure, and seller payment timeline. Plaintiff would have used a different marketplace to sell his used engagement ring had he known he would not receive any money when selling his ring with Del Gatto.

35.     On or about January 9, 2020, Plaintiff agreed to the Terms of Use contract with Del Gatto which required Del Gatto to pay Plaintiff by the 15th of the month after the sale and authentication of the ring.[20] (Exhibit A**).**

36.     Also, on or about January 9, 2020, Plaintiff created a seller account on Del Gatto's website (www.idonowidont.com). Plaintiff then immediately listed his engagement ring on Del Gatto's seller marketplace for $4,000. That same day, Del Gatto reviewed and verified Plaintiff's

---

[20] https://www.idonowidont.com/terms-conditions (last accessed on Jan. 5, 2021).

paperwork regarding the engagement ring listing and approved the listing on the marketplace.

37.     On or about June 11, 2020, Del Gatto's customer care team informed Plaintiff that his engagement ring had been purchased by a buyer through the marketplace, at a sale price of $4,000.00.

38.     On or about June 11, 2020, the Buyer paid Del Gatto for Plaintiff's engagement ring.

39.     On or about June 12, 2020, Del Gatto's customer care team e-mailed Plaintiff to confirm Del Gatto's postal address and instructed Plaintiff to mail the ring to its New York address.

40.     On or about June 16, 2020, Plaintiff e-mailed Del Gatto to request a two-day shipping label for the ring. Thereafter, Del Gatto e-mailed Plaintiff a UPS shipping label, and Plaintiff shipped his engagement ring through UPS, as instructed.

41.     On or about June 22, 2020, Del Gatto received Plaintiff's engagement ring.

42.     On or about July 16, 2020, Del Gatto's gemologist reviewed, verified, and approved of the description and authentication of Plaintiff's engagement ring.

43.     On or about July 31, 2020, on information and relief, the Buyer received Plaintiff's engagement ring from Del Gatto.

44.     Under the Terms of Use contract, Plaintiff agreed to pay Del Gatto a commission of 20% on the $4,000.00 purchase price of the engagement ring.  Therefore, Plaintiff was to receive the remaining $3,200.00 and Del Gatto was to keep $800.00 as its commission.

45.     Pursuant to the Terms of Use contract, Del Gatto was required to make its payment to Plaintiff by August 15, 2020 because the ring was sold on June 11, 2020, and Del Gatto completed the authentication process on July 16, 2020.

46.     On or about August 18, 2020, Plaintiff emailed Del Gatto regarding why payment

had not been timely received.  Del Gatto responded via email that Plaintiff would be contacted by

Del Gatto's payment department; however, Del Gatto's payment department never responded.

47.     On or about August 26, 2020, Plaintiff emailed Del Gatto for a second time

regarding why payment had not been timely received.  Del Gatto's payment department responded

to Plaintiff's inquiry via an email which stated:

> Thank you for contacting the payments department at DELGATTO
> | IDoNowIDont. Since March 16 due to the Covid-19 crisis, our
> office, which is in New York City, has been physically closed. We
> are still working remotely, however we will do our best to answer
> emails, phone calls and resolve any issued as quickly as possible.
> We thank you for your understanding and patience. Stay safe and
> remain well.
>
> Best regards,
> DELGATTO Accounting
>
> --
> Thank you,
> DELGATTO | IDoNowIDont Accounting

(Exhibit B).

48.     Over two weeks later, on or about September 1, 2020, Plaintiff contacted Del Gatto

for a third time requesting a payment status update, and Del Gatto emailed Plaintiff a message

identical to Del Gatto's previous email dated August 26, 2020. (Exhibit C).

49.     Importantly and disturbingly, in Del Gatto's email to Plaintiff dated September 1,

2020, Del Gatto acknowledged "we recognize our payment commitment to you and we will do our

best to resolve this matter for you as soon as possible." (Exhibit C).

50.     Over a month later, for a fourth time, on or about September 21, 2020, Plaintiff

contacted Del Gatto via email for a payment status update, and Del Gatto emailed a message

identical to Defendant's previous email dated August 26, 2020. (Exhibit D).

51.     Nearly two months later, for a fifth time, on or around October 12, 2020, Plaintiff

contacted Del Gatto for a payment status update, and Del Gatto e-mailed Plaintiff a message identical to Defendant's previous email dated August 26, 2020. (Exhibit E**).**

      52.    On October 12, 2020, Del Gatto sent an unprompted email to Plaintiff, stating:

> Dear Christopher,
>
> As you know from our previous email, we are still not fully operational. We are working to get caught up and back on track with payment distributions. This has taken longer than expected but we are processing. We hope to have this resolved quickly and we ask for your patience while we work through these delays. As soon as your check is issued we will advise the check details.
>
> We appreciate your business and thank you for your business
>
> Stay safe and remain well,
> --
> Thank you,
> DELGATTO | IDoNowIDont Accounting

(Exhibit E).

      53.    However, more weeks passed without any progress. Nearly three months later, on or about November 8, 2020, Plaintiff emailed Del Gatto for a payment status update.  Del Gatto sent a message identical to Del Gatto's previous email dated August 26, 2020.  (Exhibit F).

      54.    To this day, Plaintiff still has not received payment from Del Gatto, despite the clear contractual requirement in the Terms of Use requiring Del Gatto to execute payment by the following month.

      55.    Since then, Plaintiff's investigation has revealed that many other Del Gatto customers have experienced the same unlawful conduct — with dozens of online complaints clearly showing that Del Gatto has failed to make payments to sellers while continuing to take money and jewelry from others.

E.        **Online Complaints of Del Gatto's Common Deceptive Practice**

56.        A deeper investigation of Better Business Bureau (hereinafter, "BBB") complaints illustrates a disturbing pattern of Del Gatto's unlawful business practices. Del Gatto has employed COVID -19 delays and closures to further its scam, as it continues to blame its business failures on COVID-19. Del Gatto continues to advertise its website, run its online marketplace, authorize jewelry sales, accept jewelry shipments, and process buyers' payments, but then is somehow unable to process payments to sellers.

57.        Del Gatto has at least 222 complaints on the BBB in the last three years,[21] along with complaints on several other websites where consumers allege similar (or nearly identical) harm as that suffered by Plaintiff. A sampling of those complaints are below:

- 5 months ago I posted about the timeliness of receiving payments. The company contacted me and I rescinded my previous comments after they made good on the payments I was owed. Well it appears they're back at it again. Since September they've had 3 of my rings for payment and all I've gotten was excuses. Not a phone call, not an email until I reached out to them. Long story short I've come to expect my payments within 45 days according to their guidelines of sending checks on the 15th of every month. However we're now beyond 60 days for 2 of the rings and coming up on 30 for the third and still no checks in my mailbox. I've been selling with them for quite a while now and it seems their payment structure is just getting worse. As much money as they make off of commissions I would expect better service. I am more disappointed than ever.[22] (December 2019)

- I sold an item back in October 2019. I followed all procedures and sent the item in immediately for processing. I was told my payment would be sent following IDNID guidelines. Fast forward to present day, 4/**/2020 and I still have not received payment. I have called multiple times along with multiple emails and was told my payment would be processed but was backlogged, this was back in 12/2019 which was paid for by the buyer already and received my ring. I am asking for expedited payment with a lowed fee to 10%. I have sent multiple people to IDNID for purchases and I am sickened with their business. Do the right thing and issue me my payment ASAP.[23] (4/29/20)

- The check that the business states was mailed out "last week" still has not arrived at my

---

[21] https://www.google.com/search?q=i+do+now+i+dont&oq=i+do+now+i+dont&aqs=chrome..69i57j69i65.1985j0j1&sourceid=chrome&ie=UTF-8#lrd=0x89c258ff0165bfeb:0xc9793c71470dc786,1 (last accessed on Jan. 5, 2021).
[22] https://www.bbb.org/us/ny/new-york/profile/diamond/i-do-now-i-dont-0121-102880/complaints (last accessed on Jan. 5, 2021).
[23] *Id.*

residence. I live in Northern New Jersey and mail from NYC takes about 2 days TOPS to reach New Jersey. I also asked that their commission be reduced since I've waited  OVER 6 MONTHS for payment… I called and emailed and this was the only way I got a response. Their reviews online state other people have received their checks proper timing and this is from recently as well. Is there a way to be provided any tracking information on the said check, or anyway to get any information on the check???[24] (May 2020)

▪ I sold my Tiffany Diamond solitaire ring through I Do Now I Don't, it was received by them on Jan **, 2020. According to the "I Do Now I Don't" contract I should have received payment during their February payment cycle. I emailed the company several times regarding payment and each time I get a template email response saying they are behind and thank you for your patience etc. My last email indicated that I would like either payment or my property returned so that I may sell it elsewhere. I received yet another template email blaming Covid-19 for the delay. Keep in mind they had no trouble taking my item and likely the buyers (sic) money but for some reason are unable to fulfill the contract we entered into six months ago. During this shutdown I have been able to send and receive money with no issue. Any excuse for non-payment is unacceptable especially since the transaction had taken place before anyone was affected by the pandemic. Unethical business practice to say the least. These people are thieves![25] (5/27/20)

▪ To say that I am beside myself with regret over dealing with this bogus company would be an understatement. The amount of money they have stolen from me weighs on my mind day and night. If you have ever wanted to throw your jewelry away for free, this is the place for you. You'd have better luck getting payment from a garbage can than from this fraudulent business. I sold a loose diamond back in February and was due to receive $2580 by March ****. They blow off your emails with an automated response about being closed due to COVID. I have been patiently waiting for my check, all while knowing full well they are still accepting jewelry from other sellers – who will soon be facing the same problem that I and everyone else has with them. Keep in mind, this is on top of taking a whopping 20% off your sale. The "complications" that COVID has placed on this business are obviously selective, they will still happily take your belongings, but when it comes to payment they say they can't do it and will give no insight as to when. What a convenient excuse. They will not respond to your emails – I have contacted them over and over and over again. NEW YORK HAS BEEN IN PHASE 1 SINCE JUNE ****. All I want is my money! Next step I will be filing a complaint with the NY attorney general.[26] (6/29/20)

▪ I sold a ring on this site back in January 2020. The payment was supposed to be mailed out to me in February but was missed and then I was updated that it would be mailed in March. Order#****** I have since called for updates on almost a monthly basis and each time I am told that someone will get back to me and then nothing happens. I have also emailed multiple email addresses for an update and received no response. I am owed over $5000 and find it hard to believe that the company does not have access to electronic payment options or can't mail a check when the site is still operational which means money is being

---

[24] *Id.*
[25] *Id.*
[26] *Id.*

exchanged. The company has had the payment for the ring from the buyer since January.[27] (8/18/20)

- My item was sold on their site. I did exactly what I was supposed to do. Promptly. I have been waiting for my payment for over 6 weeks. I have emailed them over 12 times and I get a generic email back each time about how their offices have been shut down since March. Nonsense. I did get one response that said my payment would be mailed on 9/**. When I checked with them today it's the generic email again telling me to be patient. They have stolen my item and are now refusing to pay.[28] (9/16/20)

- I have sold a ring via this consignment company. They owe me $3200 after their commission for the ring and have not paid me yet.[29] (9/22/20)

- I sold my wedding ring set on I do now I don't back in July. The ring sold for 6500$. I cant ever get ahold of anyone at the site. It seems like a scam. After the ring sold they told me my check would be mailed the following month and it never was they say there running slow because of COVID. If you lol up complaints from others with you guys there are several. I need my money or ring back and would love your assistance.[30] (9/23/20)

- I sold my diamond 3 months ago on their website.. I dropped the diamond off at their NYC location in July- they were not closed… there were 3 people in the office when I dropped it off, I have yet to receive my payment. I continue to email them and receive only automated responses. I am starting to post reviews here and will continue to do so on all other websites that reference their company (like wedding websites) as well as post on yelp and google and wherever I can find them listed so others do not fall prey to their scam. I am also starting to file complaints with all agencies starting here at the BBB and the Attorney General of NY and I encourage others who have not received payment for their items to do so as well. I've added the link to the complaint form for easy access and steps below-GOOD LUCK EVERYONE![31] (9/27/20)

- My DIAMOND ring was sold on January 9th, 2020. Customer received my ring. It is now SEPTEMBER 1ST, 2020 and after months I STILL DID NOT RECEIVE MY PAYMENT. I know it was covid period and everyone was going through financial hardship so I did not contact this business for months. NOR DID THEY EVEN HAVE THE DECENCY TO CONTACT ME AND LET ME KNOW THAT I WILL NOT GET PAID BECAUSE THEY ARE EXPERIENCING FINANCIAL PROBLEMS. but as a human, I did my part and gave them time. I recently contacted them asking for an update and response is always the same. "We apologize for this delay. We will do our best to have a check out to you as soon as we can. As of today I do not have a specific date of issuance, yet." ARE U KIDDING ME??? Everyone is in financial hardship! after this point, this companies

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*

financial hardship is NOT my problem and my financial hardship is my concern SO I AM ASKING YOU AGAIN, I DO NOW I DON'T AND DELGATO (WHOEVER THEY ARE), PAY ME THE MONEY YOU OWE ME. I WILL NOT STOP HERE AND CONTINUE TO FILE COMPLAINTS WITH FTC, DCA and every other platform I can find. You guys are abusing the good intentions of people!! This is not fair at all!!!!!!!!!! I DEMAND ACTION.[32] (September 2020)

▪ Gave my rings to this company back in February and they were sold in March and given to the buyer who stated they were beautiful and exactly what they expected and I still have not been paid for them 7 months later. I have emailed and called and left messages countless times and have just been ignored. They won't return phone calls or emails. They have sent generic emails stating they are working on the issue but nothing has come of it. I requested they pay me the money that is owed to me or give me back my property.[33] (10/13/20)

• if you are a buyer, this will be a great experience for you.. however, if you are selling - be prepared to wait for your money for a couple of months.. inwaited fir 2 and a half.. how they operate is: buyer pays, you send the jewelry to their office, they appraise it, they send it to the buyer.. and then you wait for your payment to be "processed" by their accounting and then receive your check in the mail?! basically they just hold on to your money for as long as possible.. in this day and age with venmo, paypal, etc we are waiting for weeks for checks to be issued and mailed out?! come on, this is just bad business and they know it..[34] (October 2020)

• I sold a ring through the website in June, it was processed in July, and I still have not received payment. Barely get responses when I call or email, usually just an answering machine or automated response. I viewed this as a great opportunity to sell a piece of jewelry that carried some bad memories. Now it has created financial trouble and compounded the issue. If I could give 0 stars here I would. Check the BBB site for complaints. Seems like this is a widespread issue that has affected dozens of people (at least - many others may not have reported this). Save yourself a headache and sell your items on eBay. (I am removing the other posting I have and moving it over to eBay because of this.) The commissions are roughly the same and you don't have to advertise any stigma that comes with jewelry from a prior relationship that didn't work out.[35] (November 2020)

---

[32]https://www.google.com/search?q=i+do+now+i+dont&oq=i+do+now+i+dont&aqs=chrome..69i57j69i65.1985j0j1&sourceid=chrome&ie=UTF-8#lrd=0x89c258ff0165bfeb:0xc9793c71470dc786,1 (last accessed on Jan. 5, 2021).
[33] https://www.bbb.org/us/ny/new-york/profile/diamond/i-do-now-i-dont-0121-102880/complaints (last accessed on Jan. 5, 2021).
[34]https://www.google.com/search?q=i+do+now+i+dont&oq=i+do+now+i+dont&aqs=chrome..69i57j69i65.1985j0j1&sourceid=chrome&ie=UTF-8#lrd=0x89c258ff0165bfeb:0xc9793c71470dc786,1 (last accessed on Jan. 5, 2021).
[35] *Id.*

- Like so many others (see BBB website, Trust Pilot and many others), I am also waiting on my check for a diamond ring I sold in May. I sent my ring the very next day after I received the notice it was sold on May 1, 2020. I then received an email on May 8, 2020 confirming they received it and my payment showed the sale as being processed. Based on their payment schedule policy, my payment should have been mailed out on June 15. I still have not received my payment of $1600 (after their 20% commission taken). I have tried to contact them several times and continue to get the same canned response about COVID 19 causing a delay. I can certainly understand there being a delay due to COVID 19 shutting down NYC in the Spring, however, after this long of a delay it is no longer an acceptable excuse when NYC reopened in June. They have continued to receive payments from buyers, as well as jewelry from other sellers. As a seller it is frustrating to see positive reviews from buyers receiving beautiful rings, while sellers are desperately awaiting the payment for those rings that is rightfully ours. Especially in times like these when so many people are struggling financially and the reason for choosing to sell sentimental pieces is to make ends meet. I highly recommend you looks elsewhere to sell or buy your ring at this time. Update 11/2020: I still have not received payment. Do not use this service if you want to be paid, instead you will end up providing this company an unauthorized, interest fee loan out of your own pocket, while they continue to take commissions on top of it.[36] (November 2020)

- I sold my diamond in September. A check was supposed to be sent in November according to their contract. Guess what? No check. If this happens to you too, file a complaint with the BBB and NY Attorney General. Get these thieves shut down.[37] (November 2020)

- THIS COMPANY STEALS YOUR JEWELRY AND THEN SELLS IT. THEY DO NOT PAY ONCE THEY SELL YOUR RING. DO NOT USE THIS SERVICE.[38] (November 2020)

- I normally don't review businesses, but we were told to sell our ring on @IDoNowIDont by a local jewelers. The ring sold at the end of August and we have not received our payment yet. I would urge people to avoid I Do Now I Don't.[39] (December 2020)

- They take your jewelry and don't pay you for it. It's a SCAM. They sold my ring July 2020, and as of December I still have not been paid. They use excuses like "we can't get to the office" or "we are setting up a new computer system", but they are able to take your jewelry and money from buyers without any problem. Over 150 complaints to the BBB.[40] (December 2020)

---

[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] https://www.trustpilot.com/review/www.idonowidont.com (last accessed on Jan. 5, 2021).

- Fraud alert! Sellers do not get paid! I listed a diamond engagement ring/wedding band set on this site in Aug 2020 and was notified in Sept that the rings had sold to an online buyer. After the company took possession of the rings and supposedly "authenticated" them, they did not send payment to me and stopped replying to my emails requesting a payment status update. No excuse given for why they did not pay me, they simply will not reply. When calling on the phone the person who answers identifies herself as the "answering service" (even though I'm calling during regular business hours) and promises a response from customer care within 24 hours that of course never comes. Look at the Better Business Bureau website, close to 200 similar complaints of sellers not getting paid. Please take the time to report them to the FTC and state attorney general office if you have also been defrauded by this company.[41] (December 2020)

- 0 STARS - company is a scam. I sold my ring in June and the have not paid. They claim to have gone out of business bc of COVID but are still making money every day selling rings. I threatened to sue and they claimed "the check is in the mail". that was a month ago. Unethical scumbags.[42] (December 2020)

- I am not surprised to see all the complaints. All businesses have has to be agile during COVID 19 to ensure they are serving their customers. From the complaints I have seen, they stopped paying out in May. They have continued to accept and sell jewelry since that time. I don't see any complaints from people who have purchased and not received their jewelry, so where is the money? I am also waiting on my check ($2,000) for a my diamond ring I sold in June 2020. I received an email confirming. I have talked to them and emailed with them. They promised me payment in August and have still kept dodging my requests for payment using COVID 19 as their reasoning. It is time to file a lawsuit against them. They are only withholding payment from people who are owed $2,000 or less because they know it's not worth the money to sue. It is even more important during this time to conduct business ethically. I am beyond disappointed - up until 2020 they had good reviews.[43] (December 2020)

- This company is a scam. I sold an engagement ring on their website for $4500 on Sept 2020 ($3600 after their expensive 20% fee). It's now Dec and I still have not received my payment. I keep getting the same email stating that their office is closed whenever I email the payment department. I've emailed customer service as well but they keep referring me to the payment department. Their communication was good up until it's time to pay the seller. Apparently there are so many complaints like this against this company. They already charge such big commission for very poor service and now they seem to be avoiding paying out the sellers. What a thief. I've escalated my issue with Better Business Bureau. Hopefully they can assist.[44] (December 2020)

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

- Sellers beware. We sold our ring at the end of August. I sent them the ring and I was told that I should get paid in October. Well, after many emails and the excuse that they have not been in the office since COVID started, they have stoped responding to my emails. Customer service will only forward your email to the payment center. This is crazy that they cannot get payments out on time. The last time that the payment center responded to me was that they could not provide a time frame that my payment would be sent out.[45] (December 2020)

- DO NOT SELL YOUR VALUABLE ITEMS HERE! I sold an engagement ring set back in JUNE 2020 for $10,500.00 and still haven't been paid! They sold my set to someone, got paid and aren't paying me my money. Once they get your items you will never hear from them again! Tons of people having the same problem. Using COVID shut down as an excuse for not issuing checks but they can literally run every other aspect of their business except paying the sellers. Lawsuit coming, hope they are ready![46] (December 2020)

58.     Upon information and belief, Del Gatto responds to consumer complaints using nearly identical language and excuses:

- As you know, our office has been closed since March due to the pandemic. Needless to say, we are not caught up and we are working to do so as quickly as possible. We fully recognize our payment commitment to you and have every intention of keeping that commitment. Please bear with us. Thank you for your patience and understanding.[47] (6/22/20)

- Our office which is in New York City has been physically closed since mid-March and we are still not fully operational. We are working to resume full operations and payment distributions as quickly as possible. We ask for your patience while we work through these delays. Please note payments are only issued via hard copy check. As soon as your check is issued we will advise the check details. We appreciate and thank you for your business (sic) Stay safe and remain well,[48] (6/27/20)

- Our office which is in New York City has been physically closed since mid-March and we are still not fully operational. We are working to resume full operations and payment distributions as quickly as possible. We ask for your patience while we work through these delays. Please note payments are only issued via hard copy check. As soon as your check is issued we will advise the check details. We appreciate and thank you for your business (sic) Stay safe and remain well,[49] (9/18/20)

---

[45] *Id.*

[46] *Id.*

[47] https://www.bbb.org/us/ny/new-york/profile/diamond/i-do-now-i-dont-0121-102880/complaints (last accessed on Jan. 5, 2021).

[48] *Id.*

[49] *Id.*

- As you know may know we are still not fully operational. We are working to get caught up and back on track with payment distributions. This has taken longer than expected but we are progressing and we hope to have this accomplished with the next few weeks. Again, we recognize our payment commitment to you and we will do our best to resolve this matter for you as soon as we are able. We apologize for these delays and we thank you for your continued patience.[50] (9/18/20)

- We still are not up to date with the check processing and so your check did not go out as planned. We apologize, again, for this continued delay and we request your continued patience and cooperation while we work to resume regular business activities after these many months of closure. We will do our best to get a check out at quickly as possible. You will be notified by email once the check has been issued. Thank you for understanding. Please stay safe and remain well.[51] (11/9/20)

- We still are not up to date with the check processing and so your check did not go out as planned. We apologize, again, for this continued delay and we request your continued patience and cooperation while we work to resume regular business activities after these many months of closure. We will do our best to get a check out at quickly as possible. You will be notified by email once the check has been issued. Thank you for understanding. Please stay safe and remain well.[52] (11/9/20)

- We still are not up to date with the check processing and so your check did not go out as planned. We apologize, again, for this continued delay and we request your continued patience and cooperation while we work to resume regular business activities after these many months of closure. We will do our best to get a check out at quickly as possible. You will be notified by email once the check has been issued. Thank you for understanding. Please stay safe and remain well.[53] (11/9/20)

- We still are not up to date with the check processing and so your check did not go out as planned. We apologize, again, for this continued delay and we request your continued patience and cooperation while we work to resume regular business activities after these many months of closure. We will do our best to get a check out at quickly as possible. You will be notified by email once the check has been issued. Thank you for understanding. Please stay safe and remain well.[54] (11/9/20)

59.     Del Gatto knew or should have known that it was receiving and would continue to receive complaints and reports of breach of contract, failure to pay its sellers, and continuing its deceptive and unlawful business practices.

---

[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*

60.     Del Gatto has committed a host of unlawful business practices, including: (a) breaching its contractual obligations to process payments to Plaintiff and other class members by the specified date after completed transactions; (b) falsely advertising its commitment to pay sellers by a certain date within a month after the transaction; (c) keeping possession of jewelry without paying the rightful owners and then retaining said property; (d) marketing, advertising, and charging inflated commissions based on reasonable expectations about payment timing.

61.     Del Gatto repeatedly failed to disclose to prospective marketplace sellers that it would not process payments and/or that its payments would be severely delayed by many months. The company's deception has damaged Plaintiff and class members, either through total non-payment, delayed payments without interest, and/or inflated commissions. Indeed, Del Gatto is not entitled to any commission given its wildly unlawful conduct.

62.     Del Gatto has disabled and removed most, if not all, derogatory or negative consumer reviews, complaints, and/or comments on its social media pages, including Facebook,[55] Twitter,[56] and Instagram.[57] Del Gatto therefore knowingly and repeatedly fails to disclose its fraudulent and unlawful conduct, and actively conceals its conduct from new consumers.

63.     Del Gatto fails to make payments to marketplace sellers, which is a direct and material breach of the Terms of Use contractual obligations entered into and agreed to by Plaintiff and class members.

64.     By prolonging and/or refusing to make payments to sellers, Del Gatto can use the payment funds as an interest free and tax-free loan to itself.

65.     Without paying Plaintiff and hundreds of other customers, Del Gatto's marketplace

---

[55] https://www.facebook.com/IDoNowIDont (last accessed on Jan. 5, 2021).
[56] https://twitter.com/idonowidont (last accessed on Jan. 5, 2021).
[57] https://www.instagram.com/idonowidont/ (last accessed on Jan. 5, 2021).

is essentially operating as a scam used to bilk sellers out of their valuable property—a fact it tries to spin in a positive light in its marketing materials, on its website, and in media outlets.

66.     Plaintiff and Class Members have suffered actual damages as a result of Del Gatto's material breaches of its Terms of Use contract.

67.     Plaintiff and Class Members have suffered actual damages as a result of Del Gatto engaging in various unfair and deceptive trade practices described herein, including falsely advertising timely payments, inflating commission prices based on timely payments, and retaining lucrative jewelry without ever paying for that property.

68.     Had Plaintiff known the truth about Del Gatto's unlawful business practices—including its failure to pay and its inflated commissions—he would not have used Del Gatto's services to sell his engagement ring.

69.     Del Gatto's marketing and advertising was and is false, misleading, and reasonably likely to deceive the public.

## V.     Class Action Allegations

70.     Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class (the "National Class") is defined as follows:

> All persons in the United States who (a) sold any jewelry directly to Del Gatto or to a buyer through Del Gatto's marketplace; and (b) were not paid for the product by Del Gatto Inc. by the 15th day of the month following the completed transaction.

71.     Excluded from the Class are any Judge or Magistrate presiding over this action and members of their immediate families, and all persons who properly execute and file a timely request for exclusion from the Class.

72.     Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

**Rule 23(a) Criteria**

73.     **Numerosity.** The exact number of Class members is unknown as such information is in the exclusive control of Del Gatto. However, due to the nature of the trade and commerce involved and the number of reviews and complaints, Plaintiff believes the Class consists of hundreds of consumers, geographically dispersed throughout the United States, making joinder of all Class members impracticable.  Class members are ascertainable from a review of Del Gatto's business records.

74.     **Commonality.**  Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members. The harm that Del Gatto has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a)     Whether Del Gatto's Terms of Use contract is uniform for all Class Members;

(c)     Whether Del Gatto's practice of not making payment for the sale of goods by the 15th day of the month following the sale is a breach of its Terms of Use;

(d)     Whether Del Gatto's practice of retaining sellers' proceeds violates New York General Business Law § 349 as an unfair and deceptive practice;

(d)     Whether Del Gatto's breach of its contractual payment obligations precludes it from taking any commission (or a lower commission) on the sale of the goods at issue;

(f)     Whether Del Gatto was unjustly enriched by retaining the sellers' monies and/or

jewelry; and

(g)    Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

75.    **Typicality.** The claims and defenses of the representative Plaintiff is typical of the claims and defenses of the Class because they were all owed monies unlawfully retained by Del Gatto. Additionally, Del Gatto failed to disclose to each Class Member that it would not process owed payments to sellers in a timely manner under the contract—or even at all. Plaintiff has suffered damages of the same type and the same manner as the Class he seeks to represent and is similarly affected by Del Gatto's wrongful conduct. Specifically, Plaintiff should have received $3,200.00 from the sale of his engagement ring by August 15, 2020, but has not received any payment to date.  There is nothing peculiar about Plaintiff's claims. Indeed, Plaintiffs' claims are typical of the claims of other class members as detailed in the complaints quoted above.

76.    **Adequacy of Representation.** The representative Plaintiff will fairly and adequately assert and protect the interests of the Class.  First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims within this state and across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as his claims are the same as the class members he seeks to represent.

## Rule 23(b) Criteria

77.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members, including whether Del Gatto unlawfully retains proceeds from the sale of sellers' property on its marketplace.  A class action provides a fair and

efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

78.     Although the class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations.  Either the contractually required payments were timely made or they were not. There are no unusual legal or factual issues that would create manageability problems as the issues turn on interpretation of Del Gatto's standard form Terms of Use contracts and marketing materials.

79.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

80.     Despite the costly nature of the monies retained by Del Gatto, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover their damages and stop the unfair and deceptive practices at issue.  This cost is further inflated by having to litigate in New York despite where they reside.

81.     Injunctive relief under 23 (b)(2) is proper because Del Gatto has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate with respect to the class as a whole to prevent further harm from repetitive deceptive and unfair retention of seller's monies.

82.     Class members are readily identifiable and ascertainable given the online nature of Del Gatto's business practices. The company's sales transactions will make identification of Class members simple and straightforward.

**Tolling of Any Applicable Statutes of Limitations**

83.     For the reasons set forth herein, Plaintiff and putative members of the Class are within the applicable statute of limitation for the claims presented here. Del Gatto actively concealed that it would untimely pay or pay at all when sellers sell their jewelry, including by deleting or hiding negative comments and by sending generic emails about the impact of COVID-19. Thus, Del Gatto is estopped from asserting any statute of limitation defense that might otherwise be applicable to the claims asserted herein.

## VI.     CAUSES OF ACTION

### COUNT I
**Breach of Contract**
**(On Behalf of the Class)**

84.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-83, as if set forth fully herein.

85.     Plaintiff and Class Members entered into identical Terms of Use contracts with Del Gatto when they listed and sold their jewelry on Del Gatto's website marketplace. (Exhibit A**.)** The identical Terms of Use are therefore binding on both Del Gatto and all Class members, including Plaintiff.

86.     Plaintiff and Class Members performed all conditions precedent under the Terms of Use contract prior to filing this action.

87.     Plaintiff's and Class members' Terms of Use contract with Del Gatto required mandatory payment from Del Gatto on the 15th of the month following the sale of their property.

88.     Del Gatto breached the Terms of Use contract by failing to pay Plaintiff and Class Members by the 15th of the month following the sale transaction.  For example, Plaintiff's ring sale was fully completed in July 2020, with Plaintiff being owed $3,200.00 by August 15, 2020.

Plaintiff has confirmed that the buyer sent payment to Del Gatto on or about June 11, 2020, and that the ring was delivered to the buyer on or about July 31, 2020. But to date, Plaintiff has still not received payment from Del Gatto.

89.     As a direct and proximate result of Del Gatto's breach, Plaintiff and Class members have suffered actual damages by failing to receive monies they are contractually owed for the sale of their jewelry.

90.     Pursuant to NY CPLR § 5004, Plaintiff and members of the Class are entitled to pre-judgment interest for Del Gatto's breach of contract at the New York statutory rate of 9%.

91.     As a result of Del Gatto's breach of contract, Del Gatto should not be permitted to obtain any commission on the sales completed on behalf of Plaintiff and the Class. Therefore, Plaintiffs demand payment of the full purchase price of the jewelry obtained from the buyer as a result of Del Gatto's breach of contract, without any deduction for commissions.

## COUNT II
### Violations of New York General Business Law § 349
### (On Behalf of the Class)

92.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-83, as if set forth fully herein.

93.     Plaintiff brings this claim on behalf of himself and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, since New York law governs both the Terms of Use and the conduct at issue in this Class Action Complaint.

94.     Del Gatto's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

95.     The practices of Del Gatto described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

(a)     Del Gatto engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the timing of payments to sellers, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known to them;

(b)     Del Gatto failed to reveal facts that were material to the transactions in light of representations of fact that were made regarding when payments would be made;

(c)     Del Gatto failed to reveal material facts to Plaintiff and the Class regarding the timing of payment (or the complete lack thereof) with the intent that Plaintiff and the Class members rely upon the omission;

(d)     Del Gatto made material misrepresentations and statements of fact to Plaintiff and the Class about when payment would be received that resulted in Plaintiff and the Class reasonably believing that they would be paid for their property by the 15th day of the month following the completed sale of the jewelry;

(e)     Del Gatto intended that Plaintiff and the Class rely on its misrepresentations and omissions, so that Plaintiff and Class members would use its services to sell their used jewelry and then not be paid or timely paid for their property; and

(f)     Del Gatto knowingly and falsely represented and advertised that its services would provide payment by the 15th of the month after both the sale and authentication were completed, when Del Gatto knew that it would not pay on this timeline as promised.

(g)     Del Gatto knowingly and intentionally misled Plaintiff and the class by stating that

28

the COVID 19 pandemic caused payment delays when that is patently untrue.

96.     Under the circumstances, Del Gatto's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous as to shock the conscience of the community and warrant the imposition of punitive damages.

97.     Del Gatto's actions impact the public interest because Plaintiff and the Class were injured in exactly the same way as hundreds, and possibly thousands, of others utilizing Del Gatto's marketplace to resell their jewelry and not be paid as a result of and pursuant to Del Gatto's generalized course of deception.

98.     By committing the acts alleged in this Complaint, Del Gatto has misled Plaintiff and the Class into using its marketplace to resell their jewelry, in part or in whole, due to an erroneous belief that Del Gatto would pay Plaintiff and Class Members on the 15th of the month after the sale to the buyer was complete, when in fact Del Gatto does not pay consumers on time, or more frequently, does not pay at all. This is a deceptive business practice that violates NY GBL § 349.

99.     Del Gatto's claims and representations of when it will pay consumers who sell a product on the marketplace misled Plaintiff and Class Members and are likely in the future to mislead other reasonable consumers. Had Plaintiff and Class Members known the true facts about Del Gatto's failure to pay by the 15th of the month or at all, they would not have used Del Gatto's services to resell their jewelry, and instead would have chosen a service that would have actually paid them for their jewelry.

100.     The foregoing deceptive acts, omissions, and practices—directed at consumers— proximately caused Plaintiff and Class members to suffer actual damages by never receiving (or receiving late) payment for the sale of their jewelry on Del Gatto's marketplace. Plaintiff and Class

members are therefore entitled to recover such damages, together with equitable and declaratory relief, punitive damages, and attorneys' fees and costs under NY GBL § 349(h).

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Class)**

101.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-83, as if set forth fully herein.

102.    Plaintiff and the Class bring this claim in the alternative to the Count I breach of contract action.

103.    Del Gatto received certain monies as a result of Plaintiff and Class members sale of jewelry on Del Gatto's marketplace.

104.    Del Gatto marketed and promised to pay Plaintiff and Class members on the 15th of the month after the sale and authentication of the jewelry.

105.    Plaintiff and the Class conferred a benefit on Del Gatto by choosing Del Gatto's marketplace as the platform to resell their jewelry, which authorizes Del Gatto to collect sales monies, take a percentage and profit, and pay the net proceeds to sellers. Del Gatto possesses knowledge of this benefit and has voluntarily accepted and unlawfully retained the benefits conferred on them. For example, Del Gatto has not paid Plaintiff and Class Members for their sale of jewelry on the marketplace.

106.    Del Gatto will be unjustly enriched if it is permitted to retain the sales proceeds owed to Plaintiff and Class Members.

107.    Under the circumstances, it would be against equity and good conscience to permit Del Gatto to retain the ill-gotten benefits they received from Plaintiff and Class Members, in light of the fact that the benefits that Del Gatto is currently retaining was not reflected in its marketing

of its services.  Likewise, it would be unlawful under the circumstances to allow Del Gatto to retain any percentage of the sales proceeds as a commission.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Del Gatto as follows:

A.  Enter an order certifying the proposed Class, designating Plaintiff as the Class representative, and designating the undersigned as Class Counsel;

B.  Declare that Del Gatto is financially responsible for notifying all Class members;

C.  Declare that Del Gatto must disgorge, for the benefit of the Class, the ill-gotten profits it received from retaining jewelry sales proceeds;

D.  For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

E.  For actual damages sustained, as allowed by law;

F.  For punitive or exemplary damages;

G.  For injunctive and declaratory relief;

H.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action pursuant to NY GBL § 349 (h); and

I.  For such other and further relief as this Court deems just and appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 7th day of January, 2021.

Respectfully submitted,


 /s/Brian R. Morrison
Brian R. Morrison (BM-1986)
Ariana J. Tadler (AT-0452)
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY  10119
Telephone: (212) 946-9300
Fax: (929) 207-3746
bmorrison@tadlerlaw.com
atadler@tadlerlaw.com

Brian W. Warwick (*pro hac vice to be submitted*)
Mathew Peterson (*pro hac vice to be submitted*)
Varnell & Warwick, P.A.
1101 E. Cumberland Ave,
Suite 201H, #105
Tampa, FL 33602
Telephone:  352-753-8600
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com

CHRISTOPHER J. BROCHU
(*pro hac vice to be submitted*)
Law Office of Christopher J. Brochu, PLLC
ONE CALL TOWER
841 Prudential Drive, Suite 1200
Jacksonville, Florida 32207
904-201-1771 (telephone)
904-429-4218 (facsimile)
C.BROCHU@BROCHULAW.COM

*Attorneys for Plaintiff Christopher Polk, and on behalf of all others similarly situated.*