**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MAHATTAN DIVISION**
_____x

CHRISTOPHER POLK,
*individually, and on behalf of all others*
*similarly situated,*

               Plaintiff,               **Case No.: 1:21-cv-00129-PAE**

v.


DEL GATTO, INC.,

               Defendant.

_____x


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**THE COMPLAINT UNDER FRCP 12(b)(1) and 12(b)(6)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

POINT I: THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE

PLAINTIFF DOES NOT HAVE A JUSTICIABLE DISPUTE WITH DEL GATTO .............. 6

POINT II: PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED . 7

A.      The IDNID Terms and Conditions Disclaimed All Warranties Concerning the Service

Provide By Del Gatto Through the IDNID Marketplace and Released Del Gatto from

Claims for Damages ............................................................................................ 8

B.      Even if Del Gatto Was Obligated to Make Payment to Sellers By the 15th Day of the

Month Following a Sale, Performance Was Impracticable .................................................. 10

POINT III: PLAINTIFF LACKS STANDING TO BRING A CLAIM UNDER NEW YORK

GENERAL BUSINESS LAW § 349 ...................................................................... 13

POINT IV: PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST FAIL BECAUSE IT IS

MERELY DUPLICATIVE OF PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT.... 16

CONCLUSION.................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir. 1983) ......................................................... 9

*Accord Auto. Ins. Co. of Hartford*, Connecticut v. Electrolux Home Prod., Inc., No. 08-CV-
623A, 2011 WL 3295510, at *1 (W.D.N.Y. Aug. 1, 2011) ...................................... 9

*Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987) ...................... 9

*Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) .................................................. 8, 9

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ......................................................................... 8

*Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005) ......................... 8

*Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) ........................................................... 8

*Chiste v. Hotels.com L.P.*, 756 F. Supp.2d 382, 403 (SDNY 2010) ......................................... 18

*Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski*, 14 A.D.3d 644, 645 (2d Dep't 2005)
...................................................................................................................... 19

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) .............................................. 19, 20

*Couhard Transp. Co., Inc. v. New York Islanders Hockey Club, LP*, 40 A.D.3d 897, 898 (2d
Dep't 2007) .................................................................................................... 19

*Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80–81 (2d Cir. 2013) ................................... 9

*Drizin v. Sprint Corp.*, 12 A.D.3d 245, 247 (1st Dep't 2004) ................................................ 16

*Ebin v. Kangadis Food, Inc.,* 13-cv-2311 (JSR, 2013 BL 417708, 2013 US Dist. LEXIS 174174
(SDNY Dec. 9, 2013) ........................................................................................ 20

*Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002) .............................................. 16, 17, 18

*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) ......................................................... 10

*In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 223-24 (S.D.N.Y. 2019) ................................... 18

*In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147, 161 (S.D.N.Y. 2008) ................................................................................................................................. 12

*In re Rezulin Products Liab. Litig.*, 210 F.R.D. 61, 69-71 (S.D.N.Y. 2002) ............................... 12

In *RPH Hotels 51st St. Owner, LLC v. HJ Parking LLC*, 2021 NY Misc. Lexis 373 (Sup. Ct. Jan. 28, 2021) .................................................................................................................... 15

Iqbal, 556 U.S ............................................................................................................................. 8

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*, No. 20CV4370 (DLC), 2020 WL 7405262, at *9 (S.D.N.Y. Dec. 16, 2020) ............................................................... 15

*Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp.2d 681 (SDNY 2010), aff'd, 474 Fed. Appx. 5 (2d Cir. 2012) .................................................................................................... 17

*Kel Kim Corp. v. Cent. Mkts. Inc.*, 70 N.Y.2d 900, 902 (1987) ................................................ 13

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ....................................................... 13

*Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012) ................................... 13

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467-68 (2d Cir. 2010) ................................................................................................................................. 10

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ...................................................... 10

MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 165 (2d Cir. 2011) .................................................. 10

*Muia v. Brookview Rehab Funding, LLC,*  2012 WL 1014753 (NDNY Mar. 23, 2012) .............. 8

*Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999) ....................... 9

*N.Y. Soc'y for the Relief of the Ruptured & Crippled v. Wright Med. Tech., Inc.*, No. 15-cv-2871 (KBF), 2015 U.S. Dist. LEXIS 96779, at *4 (S.D.N.Y. July 24, 2015) ................... 13

*Nelson v. Millercoors, LLC*, 246 F. Supp.3d 666, 679 (EDNY 2017) ........................................ 20

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998 ...................................... 13

*Pentair Water Treatment (OH) Company v. Continental Ins. Co.*, No. 08 Civ. 3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ................................................................ 17

*Peterson v. Cont'l Airlines, Inc.*, 970 F. Sup.. 246, 249 (SDNY 1997) ......................................... 8

*Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) ............................................................ 9

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir. 1996) ..................................... 11

*Scott v. Bell Atl. Corp.*, 282 A.D.2d 180, 726 N.Y.S.2d 60 (1st Dept. 2001) .............................. 18

*Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) .................................................................................................................................. 19

*SimplexGrinnell LP v. Integrated Sys. Power, Inc.*, 642 F. Supp. 2d 167, 203 n. 19 (S.D.N.Y. 2009) .............................................................................................................................. 17, 18

*Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. 1998) ............. 10

*Tanasi v. New All. Bank*, 786 F.3d 195, 198–201 (2d Cir. 2015), as amended (May 21, 2015) .... 9

*United Teamster Fund v. Magnacare Admin. Servs.*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) 13

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167 (SDNY 2014). ....................................... 17

*Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08-cv-3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 21, 2009) ...................................................................................................... 18

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) ..................................................... 16

**Statutes**

Fed. R. Civ. Pro.  12(b)(1) ........................................................................................................ 3, 8

Fed. R. Civ. Pro.12(b)(6) .......................................................................................................... 3, 8

Fed. R. Civ. Pro. 12(h)(3) ............................................................................................................. 8

NY Gen. Bus. Law Section 349 ......................................................................................... 4, 5, 16, 17

Defendant Del Gatto, Inc. ("Del Gatto") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff' Christopher Polk's ("Polk") Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

A few weeks before the novel coronavirus pandemic effectuated a shutdown of non-essential businesses in New York (and, indeed, across the country), Polk listed a Tiffany's engagement ring for sale on Del Gatto's "I Do Now I Don't" website ("IDNID"). Polk's engagement ring did not initially sell, and the pandemic intensified, selling used jewelry to a prospective buyer was not something Polk could have easily done, let alone safely, in the ensuing weeks and months. . Despite the uncertainty gripping individuals and businesses during the Spring of 2020, Del Gatto continued to host a listing for the sale of Polk's ring on IDNID. Ultimately, the ring sold on or about July 31, 2020.  Del Gatto kept Polk informed of the status of the process throughout, but unfortunately payment was delayed. Upon receiving notice of suit, Del Gatto tendered Polk payment in full of the amount he was due as a seller of merchandise on IDNID. Polk has not deposited the check.

Despite the foregoing indisputable facts, Polk, on behalf of himself and a putative alleged class of aggrieved consumers, claims that Del Gatto breached the terms and conditions (the "Terms and Conditions") which bind the consumers accessing IDNID. The gist of Polk's complaint is Del Gatto failed to timely make payment to those who sold jewelry on the IDNID online marketplace. Polk contends that payment to the consumer was due by a date certain and any delayed payment was not occasioned by events beyond Del Gatto's control, despite it being in the midst of an unprecedented global pandemic which shuttered non-essential businesses

around the country, including Del Gatto and IDNID. Instead, Polk surmised that Del Gatto engaged in some purposefully deceptive practice, which was simply not the case. In short, despite Polk's frustration with his delay in receiving payment, each of his claims for breach of contract, violation of NY General Business Law Section 349, and unjust enrichment lack merit and must be dismissed.

First, Plaintiff's breach of contract claim fails because Del Gatto's Terms and Conditions disclaimed liability for any interruption in its service, such as the interruption in remitting payment to sellers of jewelry during the pandemic. Indeed, even if Del Gatto was obligated to remit payment to sellers by a date certain as Plaintiff contends, it was impracticable for Del Gatto to so perform during the months at issue because Del Gatto and its vendors were non-essential businesses and were completely shuttered by governmental orders due to the pandemic. Understandably so, even when Del Gatto could reopen, it did not immediately return to business as usual and its regular business operations were severely impacted. Del Gatto ultimately performed, and Plaintiff's breach of contract claim is therefore subject to dismissal.

Second, well established precedent requires dismissal of Plaintiff's New York General Business Law Section 349 claim because out-of-state residents, such as Polk (a Florida man) and other would-be plaintiffs forming any "nationwide class of consumers" cannot avail themselves of NY Gen. Bus. Law § 349.

Third, Plaintiff's unjust enrichment claim (expressly pleaded in the alternative to his breach of contract cause of action) is duplicative of Plaintiff's ill-fated contract claim.

In any event, Del Gatto has since tendered Polk the amount due him per the Terms and Conditions of IDNID. Despite the lack of merit of the Complaint, Del Gatto offered Polk additional compensation which would make him more than whole under any cognizable cause of

action, but Del Gatto's offer was rebuffed. For that reason, Polk's Complaint is now moot and this Court should find that it no longer has subject matter jurisdiction over his claims, requiring dismissal of the Complaint.

## BACKGROUND

The Complaint sets forth the following relevant factual allegations, although many of which are disputed by Defendant, all of which are presumed to be true for purposes of this motion.

Del Gatto owns and operates IDNID, an online marketplace for consumer-to-consumer resale of engagement rings and other jewelry at the web URL www.idonowidont.com. (Compl. ¶¶ 15-20). Although it does not state when, how, or by what means or methods, the Complaint alleges that Del Gatto promotes IDNID to consumers who are "heartbroken or financially strapped" and that Del Gatto engaged in unlawful or deceptive business practices (without explaining what those deceptive business practices might be). (Compl. ¶¶3; 9). Del Gatto's IDNID website, like most others, has Terms and Conditions governing its use. (Compl. ¶¶ 21-24; Exhibit A annexed thereto).

Polk, the purported class representative, is a Florida resident. (Compl. ¶ 13). He created a seller account on the IDNID website and listed a ring from a failed engagement for sale on the consumer-to-consumer marketplace for $4,000. (Compl. ¶ 35-36). By creating an account, Polk agreed to the IDNID Terms and Conditions – which embodied "Release" and "Disclaimer" language absolving Del Gatto of liability for the claims Polk now asserts. (Compl. ¶ 35; Exhibit A to Compl.).

Del Gatto hosted a listing for the sale Polk's engagement ring on IDNID beginning on January 9, 2020. (Compl. ¶ 36). More than five months later, Polk's ring finally sold to a

prospective buyer for its list price of $4,000. (Compl. ¶ 37). Five days after Polk was notified

that a buyer was interested in purchasing his engagement ring, Polk requested a shipping label

from Del Gatto and sent the item for inspection and appraisal. (Compl. ¶ 40).

  The Complaint alleges that Del Gatto received the ring on or about June 22, 2020.

(Compl. ¶ 41). The pleading also admits that the ring was not approved and authenticated until at

least July 16, 2020 (although the Complaint omits any reference to the reasonable presumption

that the authentication process was lengthened due to COVID). (Compl. ¶ 42). Polk does not

claim that he complained about any delay in having his ring authenticated, or that this length of

time was unreasonable.

  Polk alleges that if the buyer received the ring from Del Gatto on July 31, 2020, he

should have received payment from Del Gatto on August 15, 2020 but did not. (Compl. ¶ 43; 45-

46). Given the sale price of his ring, Polk agreed to pay Del Gatto a commission equal to 20% of

the purchase price. (Compl. ¶ 44). The Complaint further alleges that other users of IDNID

experienced similar delays and that Del Gatto cited the coronavirus pandemic as the root cause

of the delays in its communications to consumers. (Compl. ¶ 56; 58).

  A copy of the Terms and Conditions in effect during the relevant time period is annexed

to the Complaint as Exhibit "A". Polk believes the Terms and Conditions required that Del Gatto

make payment by fifteenth day of the month following the completion of the authentication

process. (Compl. ¶ 23, 45). The Complaint also attempts to fault Del Gatto for failing to disclose

to prospective sellers that payments might be delayed (presumably, as a result of the pandemic).

(Compl. ¶ 61). However, in the same breath, the Complaint states that Del Gatto informed Polk

that "[s]ince March 16 due to the Covid-19 crisis, our office, which is in New York City, has

been physically closed. We are still working remotely, however we will do our best to answer

emails, phone calls and resolve any issue[s] as quickly as possible." (Compl. ¶ 47). On September 1, 2020, Del Gatto further informed Plaintiff, "we recognize our payment commitment to you and we will do our best to resolve this matter for you as soon as possible." (Compl. ¶ 49). It is apparent that contrary to Polk's contentions, Del Gatto continuously informed him (and others) that its operations were interrupted by the pandemic.

Plaintiffs self-serving interpretation of the Terms and Conditions auspiciously omits reference to a "Release" of liability for "damages (actual and consequential) of every kind or nature…arising out of or in any way related to…the Del Gatto/IDNID Service" and "Disclaimer" which expressly warned consumers that the IDNID Service was provided "AS IS" and without any warranty as to its operation or availability. (See Exhibit A to Compl.).

## LEGAL STANDARD

Rule 12(b)(1) and (6) compels dismissal of the Complaint. In considering a motion to dismiss under Fed. R. Civ. Proc. 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Muia v. Brookview Rehab Funding, LLC*, 2012 WL 1014753 (NDNY Mar. 23, 2012) citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005); *Peterson v. Cont'l Airlines, Inc.*, 970 F. Sup.. 246, 249 (SDNY 1997).

The standard for assessing a motion to dismiss requires that the plaintiff plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must "[accept] the allegations contained in the complaint as true and [draw] all reasonable inference in favor of the nonmoving party," *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), a complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S at 678.  To survive a

motion to dismiss, plaintiff's well-pleaded facts must "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## **ARGUMENT**

### **POINT I:**
### **THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF DOES NOT HAVE A JUSTICIABLE DISPUTE WITH DEL GATTO**

Del Gatto tendered Polk the full amount due him, divesting this court of jurisdiction over his supposed claims. *Muia*, citing Fed. R. Civ. Proc. 12(h)(3); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000). ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.")

"The Second Circuit has recognized that when a defendant tenders all that a plaintiff could recover if his or her claim were fully litigated, a justiciable case or controversy no longer exists and the case should be dismissed for lack of subject matter jurisdiction." *Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999); *see*, *Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir. 1983); *see also*, *Rand v. Monsanto Co*., 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate. . . and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987) (determining that a plaintiff offered all of the relief he demands may not refuse the offer and then seek a trial). Because a plaintiff is required to have a personal stake in the litigation, "without such a personal stake, a court lacks subject matter jurisdiction and the case must be dismissed." *Ambalu*, 194 F.R.D. at 452. *See also, Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80–81 (2d Cir. 2013) (a plaintiff's refusal to settle a case in return for the defendant's offer that would fully satisfy his claim, was sufficient grounds

to dismiss the case for lack of subject matter jurisdiction); *Accord Auto. Ins. Co. of Hartford, Connecticut v. Electrolux Home Prod., Inc.*, No. 08-CV-623A, 2011 WL 3295510, at *1 (W.D.N.Y. Aug. 1, 2011); *but see Tanasi v. New All. Bank*, 786 F.3d 195, 198–201 (2d Cir. 2015), as amended (May 21, 2015) (regarding unaccepted Rule 68 offers).

Assuming *arguendo* that Polk had justiciable claims at the commencement of this litigation, he no longer has an ongoing controversy with Del Gatto because he was tendered payment in full (and even beyond that, offered additional compensation far beyond what he might hope to achieve under any theory of recovery). Because Polk no longer has a personal stake in the outcome of the lawsuit, the Complaint must be dismissed. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

## <u>POINT II:</u>
## PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

Plaintiff's claim is premised solely on Del Gatto's alleged breach of that portion of its Terms and Conditions which stated that "[p]ayment for all direct purchases or marketplace sales will be issued on the 15th of every month for any items that have sold from the first day to the last day of the prior month." See Compl. ¶ 28; 33-35. Polk's claim is premised on a sale of an engagement ring on Del Gatto's IDNID marketplace "[o]n or about July 31, 2020" which he alleges required payment to him on August 15, 2020.[1] The class allegations concern a similar pattern of conduct with respect to other users of IDNID.

In New York, to establish a breach of contract claim, a plaintiff must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

---

[1] Plaintiff alleged that as of the filing of the Complaint, he had not yet received payment. Del Gatto since tendered payment to Plaintiff and delivery of a check for the full amount due Plaintiff was confirmed on February 5, 2021. See Opperman Declaration at ¶ 39.

of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). A breach of contract claim will withstand a motion to dismiss only if plaintiff "allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. 1998). Courts must read a contract 'as a whole' and construe terms in [that] context. " MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 165 (2d Cir. 2011) *quoting*, *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467-68 (2d Cir. 2010) *see also*, *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir. 1996) ("where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity.").

Plaintiff's claim should be dismissed because the express provisions of the Terms and Conditions release Del Gatto from any damages or liability arising from delays or inoperability of the IDNID service. Paragraphs 15 and 17 of the Terms and Conditions conspicuously state – in the same typeface as those portions Polk cites to as establishing a timeline for Del Gatto to make payment to marketplace sellers – that all users release Del Gatto from claims for damages and all users acknowledge that the IDNID Service is subject to interruption for reasons beyond Del Gatto's control.

A. **The IDNID Terms and Conditions Disclaimed All Warranties Concerning the Service Provide By Del Gatto Through the IDNID Marketplace and Released Del Gatto from Claims for Damages**

Plaintiff ignores the language of the terms and conditions entitled "RELEASE" (the "Release") and "DISCLAIMER OF WARRANTIES" (the "Disclaimer"). The Disclaimer provides, in relevant part:

> "THE IDNID SERVICE IS PROVIDED ON AN "AS IS" OR "AS AVAILABLE" BASIS WITHOUT ANY WARRANTIES OF ANY

> KIND. ALL EXPRESS AND IMPLIED WARRANTIES ARE
> EXPRESSLY DISCLAIMED TO THE FULLEST EXTENT
> PERMITTED BY LAW. IDNID EXPRESSLY DISCLAIMS ANY
> WARRANTY THAT THE IDNID SERVICE WILL ALWAYS BE
> AVAILABLE OR THAT IT WILL OPERATE ERROR FREE,
> AND EXPRESSLY DISCLAIMS LIABILITY FOR (i) ANY
> INTERRUPTIONS TO THE AVAILABILITY OF THE
> SERVICE…"

(See Exhibit A to Compl. at p. 6 of 8).

The "IDNID Service" is defined in the Terms and Conditions as the IDNID Website and its related services. (Exhibit A to Compl. at p. 1 of 8). Thus, Del Gatto expressly disclaimed any representation or warranty that its IDNID Service will always be available or operate error free. Furthermore, Del Gatto expressly disclaimed liability for any interruption of the IDNID Service, which by its definition encompasses use of the IDNID Website and its related services – such as appraisal and payment processing. Plaintiff's breach of contract cause of action only implicates the timing of payments made to a seller on Del Gatto's IDNID marketplace (i.e., whether payment is made by the 15th of the month following the date of the sale). Inasmuch as Del Gatto has disclaimed warranties concerning the reliability or availability of its service to all of its users, including Polk (and any alleged damages associated with same), the Complaint must be dismissed.

Even if Polk could maintain a claim concerning the timeliness of payment (which they cannot), Del Gatto is exculpated from being held liable for damages by virtue of the Release.

What's more, Del Gatto's Terms and Conditions apply New York law to any dispute arising thereunder, but also recognize that the Disclaimer may not be applicable in certain jurisdictions. Insofar as the proposed class of plaintiffs consists of a nationwide class of consumers, the proposed class is neither manageable nor is it superior because it would implicate the substantive law of multiple jurisdictions. See, e.g., *In re Rezulin Products Liab. Litig.*, 210

F.R.D. 61, 69-71 (S.D.N.Y. 2002); *see also In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147, 161 (S.D.N.Y. 2008).

### B. Even if Del Gatto Was Obligated to Make Payment to Sellers By the 15th Day of the Month Following a Sale, Performance Was Impracticable

Impracticability is a defense to a claim for breach of contract when "performance [is rendered] objectively impossible … by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v. Cent. Mkts. Inc.*, 70 N.Y.2d 900, 902 (1987).

"Affirmative defenses 'often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.' *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). But '[a]n affirmative defense may be raised by a ... motion to dismiss ... if the defense appears on the face of the complaint.'" *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also, Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012); *United Teamster Fund v. Magnacare Admin. Servs.*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014). "A party seeking to excuse contractual performance on the basis of impracticability must demonstrate that (1) an event made the performance impracticable; (2) the non-occurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes." *N.Y. Soc'y for the Relief of the Ruptured & Crippled v. Wright Med. Tech., Inc.*, No. 15-cv-2871 (KBF), 2015 U.S. Dist. LEXIS 96779, at *4 (S.D.N.Y. July 24, 2015). *See* Restatement (Second) of Contracts § 261 (1981).

Del Gatto's Midtown Manhattan offices were completely shuttered by Executive Order 202.6 which closed all non-essential businesses in New York City.[2] As a result, transactions on Del Gatto's IDNID online marketplace were impeded. New York City's non-essential businesses like Del Gatto, its various vendors (such as payment processors, and independent appraisers) were not allowed to open until at least June 8, 2020,[3] and remain unable to operate fully in-person, and beyond a certain capacity. As rates of infection periodically rise throughout New York City, a signification portion employees of New York City businesses remain working remotely to slow the spread of the virus, including Del Gatto and its various vendors.

Although Del Gatto's IDNID marketplace connects prospective sellers and buyers of jewelry in an online setting, consummating a transaction for the sale and purchase of a piece of jewelry involves several real world steps – many of which do not occur on the Internet:

- First, when a buyer agrees to purchase a seller's jewelry, the seller must ship the jewelry to Del Gatto for review and inspection. Del Gatto allows the seller up to 14 days after a buyer notifies the seller of its intention to purchase to ship the jewelry to Del Gatto. During the height of the pandemic, deliveries services were often delayed and, as mentioned above, Del Gatto's office was not open for regular business by proclamation of the Governor of the State of New York;

- Next, once the jewelry is received by Del Gatto, it is transferred to an independent third-party authentication service for appraisal. Under normal circumstances, the exchange between Del Gatto and the third-party service is a regular transaction undertaken at Del Gatto's offices multiples times per week as appraised goods are returned and new items are retrieved for appraisal. During the pandemic, Del Gatto could only send marketplace jewelry out for appraisal on an infrequent basis and even then, was forced to ship the jewelry to individual appraisers' remote locations for authentication at its own expense. The return of jewelry from

---

[2] This Court can take judicial notice of Executive Order 202.6 and those promulgated thereafter.

[3] https://www.governor.ny.gov/news/new-york-city-enters-phase-one-reopening-today-governor-cuomo-announces-new-york-city-now (last accessed February 22, 2021).

appraisal and ultimate delivery to a buyer was similarly
interrupted;

- Importantly, according to the Terms and Conditions, only once the
item is appraised and verified as being exactly what the seller
depicted it to be does the "timeline" for Del Gatto to make
payment begin;

- Del Gatto's staff vets transactions, processes shipments of
authenticated jewelry to buyers, receives payment and processing
payments to sellers of jewelry all in a remote work environment,
which caused significant delays in the traditional transaction flow.
Additionally, Del Gatto makes all payments to sellers by check
(not automatic transfer), which can only be physically cut after
payment from the buyer (typically made through a third-party
processor) clears Del Gatto's accounts.

- Each step in this entire process was slowed considerably by virtue
of the unprecedented global pandemic. Defendant informed
Plaintiff of the reason for these delays on several occasions (See
Compl.; Opperman Dec.).

Thus, it is apparent that Del Gatto did not breach its Terms and Conditions at all.

Contrary to the conclusory allegations in the Complaint, Del Gatto's entire online marketplace

operation was strained by the pandemic, and Del Gatto processed claims expediently under the

circumstances.

The New York County Supreme Court recently acknowledged that, in certain

circumstances, a party to a contract governed by New York state law may raise impracticability

occasioned by the pandemic as a defense to a claim for breach of contract. In *RPH Hotels 51st

St. Owner, LLC v. HJ Parking LLC*, 2021 NY Misc. Lexis 373 (Sup. Ct. Jan. 28, 2021), Justice

Arlene P. Bluth left the door open for businesses "that were forced to close for months" to assert

a frustration of purpose or impossibility defense. *Id*. And the Southern District of New York has

recently applied New York law on a motion to dismiss, dismissing a complaint alleging breach

of contract finding that the COVID-19 pandemic and the attendant government-imposed restrictions on business operations justified termination of the contract. *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, No. 20CV4370 (DLC), 2020 WL 7405262, at *9 (S.D.N.Y. Dec. 16, 2020).

Because Del Gatto's offices were shuttered for months and its business significantly interrupted, on a motion to dismiss it can similarly avail itself of an impracticability defense to allegations concerning the timing of performance, warranting dismissal of a claim premised solely on the timing of payments made to marketplace sellers. This is especially the case where Defendant has already tendered-in-full his entire contractual payment.

### POINT III:
### PLAINTIFF LACKS STANDING TO BRING A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349

Plaintiff, a Florida resident (and other out-of-state members of a putative class), cannot plead that any deceptive act or practice occurred in the State of New York for the purposes of satisfying GBL § 349. Plaintiff readily admits in the pleading that the purported class consists of consumers "geographically dispersed throughout the United States". *See* Compl. ¶ 73. As such, Plaintiff has not properly pleaded a NY Gen Bus. Law claim, and one could not be properly maintained by any purported class members not located in New York. Furthermore, Plaintiff does not specifically plead what actions of Defendant were deceptive and the Plaintiff's cause of action under Section 349 is duplicative of his breach of contract claim.

New York General Business Law 349 addresses "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful. (emphasis added). To establish a claim under Section 349(a), "a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the

defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). "[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002).

Courts have further explained that "[s]ection 349 requires the deceptive transaction to have occurred in New York, leaving potential class members from outside the state…with no viable claim under the statute". *Drizin v. Sprint Corp.*, 12 A.D.3d 245, 247 (1st Dep't 2004) citing *Goshen*, supra. Importantly, the caselaw makes clear that a defendant's principal place of business in New York is not sufficient to render NY Gen. Bus. Law § 349 applicable and marketing plans which originated in New York are not of consequence. *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp.2d 681 (SDNY 2010), aff'd, 474 Fed. Appx. 5 (2d Cir. 2012). *Goshen*, which was adopted by this Circuit when it dismissed plaintiffs' NY Gen. Bus. Law claims in *Kaufman*, explicitly rejected the assertion of a GBL § 349 claim by non-New York plaintiffs who had not engaged in any transaction in New York, even though the allegedly improper scheme was "contrived and implemented" in New York by defendants that "have extensive ties to New York and conduct business in the state." *Kaufman*, 751 F. Supp. at 688 citing *Goshen*, N.Y.2d at 321; *see also Pentair Water Treatment (OH) Company v. Continental Ins. Co.*, No. 08 Civ. 3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear that the fact that [defendant's] principal place of business is in New York is not sufficient to render GBL § 349 applicable."); *SimplexGrinnell LP v. Integrated Sys. Power, Inc.*, 642 F. Supp. 2d 167, 203 n. 19 (S.D.N.Y. 2009).

Plaintiff only states, in insufficient and conclusory fashion, that Section 349 is relevant here because "New York law governs both the Terms of Use and the conduct at issue in this

Class Action Complaint" and because Del Gatto engaged in a laundry list of alleged acts Plaintiff

characterizes as deceptive or unfair (Compl. at ¶ 93; 95.) That is not enough to state a claim

under the GBL because there is "a territorial test…embedded in GBL [section] 349: to state a

claim under the statute, the deception of a consumer must occur in New York." *Ward v.*

*TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167 (SDNY 2014).

     In *Goshen*, the seminal case dismissing a Gen. Bus. Law claim at the pleading stage, the

plaintiffs, Florida residents, alleged that they were "the victims of a deceptive scheme contrived

and implemented" in New York by defendants with "extensive ties to New York [who] conduct

business in the state." 98 N.Y.2d at 321. Nevertheless, the court determined "the transaction in

which the consumer is deceived must occur in New York." *Id*. at 324.

     *Kaufman* and *Scott v. Bell Atlantic*, both *Goshen's* digital age progeny, held that

deceptive statements made over the Internet must focus on the location of the consumer and that

allegations of signals emanating from New York are simply not enough. *Scott v. Bell Atl. Corp*.,

282 A.D.2d 180, 726 N.Y.S.2d 60 (1st Dept. 2001) Even if a plaintiff argues that "the deceptive

practices… occurred in and emanated from New York, where [Defendants] were headquartered,

and where the individual defendants resided, conducted business and/or had extensive ties, for

out-of-state residents, this assertion of ties to New York is insufficient." *In re Fyre Festival*

*Litig.*, 399 F. Supp. 3d 203, 223-24 (S.D.N.Y. 2019) (internal citations omitted).

     *Chiste v. Hotels.com L.P.* reached a similar result when weighing whether Internet

transactions invoked Section 349. *Chiste v. Hotels.com L.P.*, 756 F. Supp.2d 382, 403 (SDNY

2010). In a putative class action against a hotel booking website where allegations of deceptive

business practices were sufficiently pleaded, Judge McMahon held that "[p]laintiffs here made

and paid for their hotel reservations on the Internet from their respective home states…[and] the

alleged deceptive practice occurred at the time the hotel reservations were made on the websites…[c]onsequently, any deception occurred when the reservations were made and all of the Plaintiffs, except for Lamattina, made their hotel reservations outside of New York…". *Id*. *See e.g. SimplexGrinnell LP.*, 642 F. Supp. 2d 167 at n.19 ) ("It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere. The statement concerning direct access to parts and services was sent to a potential customer in New Jersey and is thus outside the bailiwick of the New York statute."); *Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08-cv-3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 21, 2009) ( "New York law is clear that the fact that Fidelity's principal place of business is in New York is not sufficient to render GBL § 349 applicable."); *Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) ( "The Court of Appeals expressly rejected the theory that the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters. . . . Consequently, plaintiffs cannot state a claim under the GBL for purchases made outside of New York."). occurred in New York.

Similarly, here, Plaintiff is a Florida resident who presumably accessed the IDNID website from his residence in Florida. Other nationwide class members accessed the IDNID website from their respective home states. Thus, under *Goshen* and its progeny, Plaintiff lacks standing to avail himself of this claim, and the only potential class members who could possibly seek relief under the Gen. Bus. Law are those who, unlike Polk, accessed the IDNID website while physically located in New York.

**POINT IV:**
**PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST FAIL BECAUSE IT IS MERELY DUPLICATIVE OF PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT**

"An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); see also *Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski*, 14 A.D.3d 644, 645 (2d Dep't 2005); *Couhard Transp. Co., Inc. v. New York Islanders Hockey Club, LP*, 40 A.D.3d 897, 898 (2d Dep't 2007) ("plaintiff's cause of action sounding in unjust enrichment should have been dismissed as duplicative of its breach of contract cause of action"). Although an unjust enrichment claim may be pleaded in the alternative, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. Millercoors, LLC*, 246 F. Supp.3d 666, 679 (EDNY 2017) citing *Ebin v. Kangadis Food, Inc.,* 13-cv-2311 (JSR, 2013 BL 417708, 2013 US Dist. LEXIS 174174 (SDNY Dec. 9, 2013) (internal quotation marks omitted).

Here, Plaintiff's cause of action for unjust enrichment is expressly brought in the alternative to their breach of contract claim (Count I). (See Compl. ¶ 102). For that reason alone, because the Terms and Conditions govern the transactions and occurrences at issue in this litigation, a claim for unjust enrichment cannot be properly pleaded. Furthermore, this is not the typical case in which defendant received money to which it is not entitled. *Corsello*, 18 N.Y.3d at 790. In fact IDNID provided the contracted for services of listing Plaintiff's ring for sale on its marketplace.  Del Gatto has already tendered payment to Plaintiff and other would-be class members, rendering any claim for unjust enrichment untenable in the event it was not duplicative of Plaintiffs' breach of contract claim.

## **CONCLUSION**

For the foregoing reasons, Del Gatto respectfully requests that the Complaint be

dismissed in its entirety, together with such other and further relief as the Court deems just and

proper.

DATE: February 24, 2021
        Rockville Centre, New York

                                        Respectfully submitted,

                                        /s/ Paul M. O'Brien_____(PO 1990)
                                        Paul M. O'Brien
                                        Moish E. Peltz

                                        **FALCON RAPPAPORT & BERKMAN PLLC**
                                        265 Sunrise Highway, Suite 50
                                        Rockville Centre, New York 11570

                                        1185 Avenue of the Americas, Third Floor
                                        New York, New York 10036
                                        *Counsel for Defendant*