**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION**

CHRISTOPHER POLK,
*individually, and on behalf of all others similarly situated*,

        Plaintiff,

v.                                      CASE NO: 1:21-cv-00129-PAE

Del Gatto Inc.,

        Defendant.

_____/

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Table of Contents**

I.   Introduction ............................................................................................................... 1

II.  Factual Background and Procedural History........................................................... 3

III. Legal Standard.......................................................................................................... 5

IV.  Argument.................................................................................................................. 6

    A.  The Court Should Not Consider Del Gatto's Self-Serving Declaration. ............... 6

    B.  Plaintiff's Claims Are Alive and Well, and This Court Has Subject Matter Jurisdiction... 7

    C.  Plaintiff's Breach of Contract Claim Should Move Forward.................................. 9

        1.  Warranty Disclaimers Do Not Apply to Service Contracts, and Plaintiff Does Not Assert a Breach of Warranty Claim........................................................................... 9

        2.  "Impracticability" Does Not Absolve Del Gatto of Liability.............................. 10

    D.  Plaintiff Properly Pled a Claim under New York General Business Law § 349. ...... 12

    E.  Plaintiff Properly Pled a Claim for Unjust Enrichment in the Alternative........................ 14

    F.  Conclusion................................................................................................................ 14

# Table of Authorities

**Cases**

*Abrams v. Interco, Inc.*,
   719 F.2d 23 (2d Cir. 1983) .................................................................................................. 8

*AFP Mfg. Corp. v. AFP Imaging Corp.*,
   No. 17-CV-03292 (NSR), 2018 U.S. Dist. LEXIS 112767 (S.D.N.Y. July 5, 2018) ............... 14

*All. to End Repression v. City of Chicago*,
   820 F.2d 873 (7th Cir. 1987) ............................................................................................... 8

*Amendola v. Basement Waterproofing Co.*,
   203 A.D.2d 403 (N.Y. App. Div. 1994) .............................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 3, 5, 6

*Bentivoglio v. Event Cardio Grp., Inc.*,
   No. 18-cv-2040 (PKC), 2019 U.S. Dist. LEXIS 206381 (S.D.N.Y. Nov. 27, 2019) ............... 14

*Brown v Neff*,
   603 N.Y.S.2d 707 (N.Y. Sup. Ct. Tompkins Cty. 1993), *aff'd*, 250 A.D.2d 225 (N.Y. App. Div. 1998) ............................................................................................................................. 9

*CAI Rail, Inc. v. Badger Mining Corp.*,
   No. 20 Civ. 4644, 2021 WL 705880 (S.D.N.Y. Feb. 22, 2021) ............................................ 11

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ....................................................................................................... 7, 9

*Carter v. Stanton*,
   405 U.S. 669 (1972) ........................................................................................................... 6

*Chapman v. First Index, Inc.*,
   796 F.3d 783 (7th Cir. 2015) ............................................................................................... 8

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................................................. 5

*D.K. v. Teams*,
    260 F. Supp. 3d 334 (S.D.N.Y. 2017) ...................................................................................... 6

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006) ..................................................................................................... 6

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988) ....................................................................................................... 6

*Geismann v. ZocDoc, Inc.*,
    850 F.3d 507 (2d Cir. 2017), *vacated*, 909 F.3d 534 (2d Cir. 2018) ........................................ 7

*Geismann v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1605 (2019) ........................................... 8

*Goshen v. Mut. Life Ins. Co.*,
    774 N.E.2d 1190 (N.Y. 2002) ................................................................................................ 12

*In re AMLA Litig.*,
    328 F.R.D. 127 (S.D.N.Y. 2018)............................................................................................ 13

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
    No. 20CV4370 (DLC), 2020 WL 7405262 (S.D.N.Y. Dec. 16, 2020).................................. 12

*Kaufman v. Sirius XM Radio, Inc.*,
    751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) ........................... 13

*Kel Kim Corp v Central Markets*,
    70 N.Y.2d 900 (N.Y 1987)...................................................................................................... 11

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996)..................................................................................................... 13

*Levine v. Sears Roebuck & Co.,*
    200 F. Supp. 2d 180 (E.D.N.Y.2002)..................................................................................... 10

*Manes Org. Inc. v. Standard Dyeing & Finishing Co.*,
  472 F. Supp. 687 (S.D.N.Y.1979) .......................................................................................... 10

*Murphy v. Equifax Check Servs., Inc.*,
  35 F. Supp. 2d 200 (D. Conn. 1999) ....................................................................................... 8

*Pentair Water Treatment Co. v. Cont'l Ins., Inc.*,
  No. 08 Civ. 3604, 2009 U.S. Dist. LEXIS 39932 (S.D.N.Y. Apr. 21, 2009) ........................... 13

*Rand v. Monsanto Co.*,
  926 F.2d 596 (7th Cir. 1991) .................................................................................................. 8

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
  642 F. Supp. 2d 167 (S.D.N.Y. 2009) .................................................................................... 13

**Statutes**
New York General Business Law § 349 ........................................................................ 2, 5, 12, 13

**Rules**
Fed. R. Civ. P. 8(a) ................................................................................................................... 14

Plaintiff Christopher Polk ("Plaintiff") submits this Memorandum of Law in Opposition to Defendant Del Gatto Inc.'s Motion to Dismiss the Class Action Complaint (the "Motion").

**I.    Introduction**

Defendant Del Gatto Inc. ("Del Gatto") brands itself as a trustworthy, secure online marketplace for consumer-to-consumer jewelry sales, primarily specializing in engagement rings from failed relationships (with the accompanying website branding, "I Do Now I Don't"). The company handles payment exchange, jewelry authentication, and shipment services in exchange for sizeable commissions on each transaction. As part of its Terms of Use (which contractually bind Plaintiff and others who use its marketplace), Del Gatto promises to pay sellers for any completed transactions by the following month.

Plaintiff signed up for Del Gatto's service in January 2020, entrusting the company with the sale of his $4,000 engagement ring. But after Plaintiff's ring was authenticated, sold, and shipped to a buyer in July 2020 through the online marketplace for the full asking price, Del Gatto withheld payment. Plaintiff demanded answers for more than four months about when he would be paid, but aside from conceding that Plaintiff was in fact owed money, Del Gatto kept sending generic customer service emails without any information about a forthcoming payment. After nearly five months of non-payment from August 2020 through January 2021, Plaintiff was left with no choice but to file the Complaint in this Action.

At several points, Del Gatto blamed payment delays on COVID-19 in its emails to Plaintiff. That excuse rang hollow to Plaintiff at the time, just as it does now. Del Gatto was able to perform *nearly every one of its core business functions*—operate its online platform, receive shipments of jewelry from sellers, authenticate the jewelry, send shipments of jewelry to buyers, and collect payments from those buyers—but COVID-19 mysteriously prevented the company from issuing

and mailing checks to Plaintiff and other sellers. Del Gatto's rationale defies logic.

Plaintiff is not alone in his frustration. The Class Action Complaint ("Complaint" or "Compl.") is replete with allegations about other sellers experiencing the same issue through Del Gatto's marketplace—some receiving payment many months later after completed transactions, and many others never receiving payment at all. Some of those online complaints referenced the same excuse from Del Gatto—that COVID-19 was to blame for its failure to issue and mail checks.

Now, Del Gatto seeks to dismiss the Complaint by relying on a declaration far outside the scope of the Complaint and lackluster legal arguments in its accompanying brief. The company first argues that the Court lacks jurisdiction after a check was *finally* mailed to Plaintiff in February 2021 for $3,400—the $4,000 sale price minus a commission. Plaintiff never cashed or accepted the check, and the tendered amount comes nowhere close to fully compensating Plaintiff for all his damages, attorneys' fees, and expenses. Courts in the Second Circuit have rejected defendants' efforts to defeat a claim throughout unaccepted settlement offers, and even if "complete relief" could moot a case, Del Gatto's check misses the mark. Plaintiff's claim is therefore very much alive, and this Court has subject matter jurisdiction to adjudicate the claims.

Del Gatto also unsuccessfully argues that Plaintiff's contractual claim must be dismissed while relying on warranty disclaimer language in its Terms of Use. Plaintiff makes no warranty claims in his Complaint, and warranty disclaimers generally only apply to contracts for the sale of goods. Instead, here, Plaintiff's claim alleges breach of contract—Del Gatto breached the very core of its agreement to provide prompt payment in exchange for Plaintiff's sold engagement ring.

Finally, Del Gatto seeks to dismiss Plaintiff's claim for violations of New York General Business Law Section 349. Del Gatto contends that New York law cannot apply despite the entirety of the allegations tying Del Gatto's misconduct to New York (withheld payments and wrongfully

retained commission fees for Plaintiff's ring shipped to Del Gatto's New York business address). That argument not only falls flat, but it also conveniently ignores Del Gatto's contractual choice-of-law provision requiring the application of New York law to adjudicate "any disputes" with Plaintiff and its other customers.[1]

As discovery commences, Defendant's misconduct will become even more evident. At the pleading stage, however, all that is required is enough to put Defendant on notice of the claims being asserted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's Complaint easily crosses this threshold.

## II.   Factual Background and Procedural History

Del Gatto operates a consumer-to-consumer jewelry sales business, a relatively niche market that competes with pawn shops and other jewelry businesses. Compl. ¶¶ 1-3. Focusing on heartbroken or financially strapped jewelry owners, especially those with engagement rings from failed relationships, Del Gatto advertises and promises to market and sell consumers' jewelry through its website, "I Do Now I Don't" (www.idonowidont.com). *Id.* ¶¶ 3, 15, 17. Del Gatto charges sellers a commission ranging from 10% to 25% of the sale price, while simultaneously contractually guaranteeing sellers that they will be promptly paid for any completed sales. *Id.* ¶ 4, 24. Paragraph 9 of Del Gatto's Terms of Use, titled "If You Are a Seller," states:

> Payments for all direct purchases or marketplace sales are issued on the 15th of every month for any items that have sold and passed authentication from the first day to the last day of the month prior. For example, all payments issued on February 15th would cover any items sold and passed during January 1st - January 31st. All payments will be sent by check via USPS. For Marketplace sales, the payment timeline begins once the item is received in-house and authenticated. For Direct Offers and VIP sales, the payment timeline begins once

---

[1] Del Gatto also seeks dismissal of the claim for unjust enrichment. Plaintiff is willing to withdraw the claim so long as Del Gatto concedes the validity of the contract attached to the Complaint.

the Purchase Form has been signed.

*Id.* ¶ 23. But Del Gatto has repeatedly breached this express contractual obligation, often failing to pay consumers for at least several months—*if ever*—after fully completed sales. *Id.* ¶¶ 5-7.

Plaintiff sold his diamond engagement ring through Del Gatto's online platform in July 2020, but Del Gatto had still failed to complete payment to him by the time the Complaint was filed *nearly five months later*. *Id.* ¶ 6. "Plaintiff was attracted to Del Gatto's simple payment processing for sellers, the contractual obligation to pay sellers out by the following month (minus a reasonable commission), and Del Gatto's claim that it would be far superior to other jewelry marketplaces." *Id.* ¶ 33. Plaintiff agreed to the company's Terms of Use on January 9, 2020, and then listed his engagement ring for $4,000. *Id.* ¶¶ 35-36. On or about June 11, 2020, Del Gatto informed Plaintiff that his ring had been purchased by a buyer for the full amount of $4,000. *Id.* ¶ 37. The following day, Del Gatto's customer care team emailed Plaintiff, instructing him to mail the ring to its New York business address. *Id.* ¶ 39. Plaintiff shipped the ring within the week, and in July 2020, Del Gatto's gemologist reviewed, verified, and authenticated the engagement ring. *Id.* ¶¶ 40-42. On information and belief, the buyer received the ring by the end of July 2020, and Del Gatto owed $3,200 to Plaintiff (the full price minus a 20% commission). *Id.* ¶¶ 43-44. Plaintiff expected full payment by August 15, 2020,[2] and when he had not yet received payment, he promptly contacted Del Gatto. Del Gatto conceded its "payment commitment" in an email dated September 1, 2020. *Id.* ¶ 49. Despite Plaintiff repeatedly following up with the company from August through November 2020, Del Gatto sent generic customer service emails without any actual payment updates or timeline, instead broadly placing blame on COVID-19. *Id.* ¶¶ 46-53.

---

[2] Even assuming *arguendo* the transaction was completed in early August 2020, Del Gatto still owed payment to Plaintiff by September 2020.

4

Plaintiff's experience is far from isolated. An investigation revealed hundreds of online complaints mirroring Plaintiff's problems with Del Gatto. *Id.* ¶¶ 7, 57. In the last three years alone, more than 220 complaints were lodged with the Better Business Bureau and other similar websites—many of which are reproduced in Plaintiff's Complaint. *Id.* Del Gatto maintained in many of its emails to those consumers that COVID-19 was to blame—a hollow excuse. *Id.* ¶¶ 8, 57. As detailed in the Complaint, Del Gatto was able to continue nearly all its core business operations during COVID-19: maintaining an online marketplace, receiving shipments of jewelry, inspecting and authenticating jewelry, shipping jewelry to buyers, and processing buyers' payments. But miraculously, Del Gatto could not fulfill its contractual obligation to issue and mail checks to Plaintiff and other jewelry sellers just like him—a convenient omission in the supply chain that allowed for significant unlawful profits at Plaintiff's and others' expense.

Plaintiff filed his Complaint on January 7, 2021, alleging claims for breach of contract, violations of New York General Business Law Section 349, and unjust enrichment. Defendant filed the instant Motion to Dismiss, and no discovery has commenced.

### III.   Legal Standard

On a Motion to Dismiss under Rule 12(b)(6), a court simply determines whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief[]' in order to 'give the defendant fair notice of [] the . . . claim [] and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. Notably, the "plausibility standard is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57). "In considering a motion to dismiss, a district court must 'accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiffs favor.'" *D.K. v. Teams*, 260 F. Supp. 3d 334, 351 (S.D.N.Y. 2017) (citation omitted).

IV.     Argument

A. **The Court Should Not Consider Del Gatto's Self-Serving Declaration.**

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). When matters outside the pleadings are presented on a 12(b)(6) motion, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *see also Carter v. Stanton*, 405 U.S. 669, 671 (1972) (where "matters outside the pleadings were presented and not excluded by the court, the court was . . . required by Rule 12(b) of the Federal Rules of Civil Procedure to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56"). Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner*, 463 F.3d at 134 (reversing dismissal where district court erroneously considered disputed materials on motion to dismiss). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

Here, Del Gatto submits outside evidence in the form of a seven-page, self-serving declaration in support of its motion to dismiss, asserting a host of reasons why payments were

6

delayed due to COVID-19. Declaration of Joshua Opperman Representative of Del Gatto, Inc. in Support of Its Motion to Dismiss the Complaint ("Decl."), ECF No. 17 at 4-5. This declaration is far from the type of evidence that can be considered on a motion to dismiss, particularly because it presents heavily disputed factual narratives that can only be weighed after discovery. This declaration would be more appropriately included in a motion for summary judgment *after* discovery and depositions have been completed. The Court therefore should ignore the Declaration.[3]

### B. Plaintiff's Claims Are Alive and Well, and This Court Has Subject Matter Jurisdiction.

Del Gatto first asserts that this Court lacks subject matter jurisdiction over this matter because it mailed a check to Plaintiff (*after the Complaint was already on file for nearly one month*) for a total of $3,400[4]. Plaintiff did not accept or cash this check. Nor would he since the check does not even come close to providing the complete relief sought in the Complaint. Regardless, this Circuit has made it clear that an unaccepted settlement offer or check does not moot a case or controversy.

The Supreme Court and the Second Circuit have both held that unaccepted settlement offers do not moot a plaintiff's claim. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016) ("an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case"); *Geismann v. ZocDoc, Inc.*, 850 F.3d 507, 513 (2d Cir. 2017) (same), *vacated*, 909 F.3d 534 (2d Cir. 2018). Regardless of whether Del Gatto had offered a settlement through Plaintiff's counsel or mailed a check, the law is the same:

---

[3] The only fact that can be properly considered is that Del Gatto issued and mailed a check to Plaintiff since jurisdictional disputes are not bound by the same four corners of the Complaint. Still, for the reasons herein, Del Gatto's jurisdictional argument is without merit.
[4] Del Gatto fails to explain how it calculated $3,400 since a 20% commission on a $4,000 ring would have resulted in a $3,200 check. Regardless, $3,400 does not make Plaintiff whole.

7

> [W]e see no material difference between a plaintiff rejecting a *tender* of payment (pursuant to Rule 67) and an *offer* of payment (pursuant to Rule 68). Indeed, other than their labels, once rejected, the two do not differ in any meaningful way: In each case, all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree.

*Geismann v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018) (quotation marks and citation omitted), *cert. denied*, 139 S. Ct. 1605 (2019). Put differently, even if Del Gatto had deposited $3,200 with the Court for Plaintiff, the outcome would be the same. *See id.*

Del Gatto relies on outdated case law and many decisions from outside the Second Circuit to support its jurisdictional argument.[5] *See Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999); *Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir. 1983); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991); *All. to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987). None are availing since the Second Circuit's recent decisions in *Geismann* and the Supreme Court's decision in *Campbell-Ewald* control the issue, jurisdictionally.

At any rate, $3,400 is *only a portion* of what Plaintiff is seeking in this lawsuit; Del Gatto still is withholding its wrongfully retained commission (the fee subtracted from the $4,000 sale)—damage expressly sought in Plaintiff's Complaint. Nor did Del Gatto offer attorneys' fees or costs, an admission of liability, or any relief for the class. As a result, even if "complete relief" could moot Plaintiff's case, Del Gatto's check is far off the mark. *See* G*eismann*, 909 F.3d at 541 ("a lawsuit—or an individual claim—becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation").

---

[5] Del Gatto relies largely on Seventh Circuit case law in its argument, but the Seventh Circuit reversed its position in 2015 that an unaccepted offer of judgment can moot a plaintiff's case. *See Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) (specifically overruling *Rand v. Monsanto,* 926 F.2d 596, 598 (7th Cir. 1991) and holding that a personal claim was not moot when the offer of judgment expired.). In any event, Second Circuit cases control the outcome of this issue.

For these reasons, Plaintiff's claims are alive and well, and the Court has jurisdiction. Additionally, since this Complaint is brought on behalf of a class, "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Campbell-Ewald Co.*, 577 U.S. at 165.

### C. Plaintiff's Breach of Contract Claim Should Move Forward.

Del Gatto advances two arguments for why Plaintiff's breach of contract claim should be dismissed: (1) the Disclaimer of Warranties in its contract absolves it of liability, and (2) its breach was excused because timely payment was "impracticable." For the reasons set forth below, neither argument has merit.

#### 1. Warranty Disclaimers Do Not Apply to Service Contracts, and Plaintiff Does Not Assert a Breach of Warranty Claim.

Del Gatto's Terms of Use include a "Disclaimer of Warranties." Compl., Exhibit A, ¶ 17. However, Plaintiff does not assert a Breach of Warranty claim against Del Gatto—only a Breach of Contract claim. Accordingly, there is no warranty alleged to have been violated, and the disclaimer or warranty provision has no impact on Plaintiff's claim.

In any event, warranty claims cannot stem from the breach of a service contract as opposed to the sale of goods. In *Brown v Neff*, 603 N.Y.S.2d 707, 709 (N.Y. Sup. Ct. Tompkins Cty. 1993), *aff'd*, 250 A.D.2d 225 (N.Y. App. Div. 1998), the court evaluated whether a warranty claim could be asserted against a provider of a service contract for auto inspection services and held that warranty claims do not apply to service contracts:

> "[A] cause of action for breach of warranty requires an underlying transaction of a kind which generates a warranty. Clearly, the Uniform Commercial Code does not apply to the rendition of services for a price. In our view, the performance of an auto inspection is a service, not the sale of goods within Article 2 of the

9

> U.C.C. Therefore, the warranty claim must fail for lack of a predicate transaction.

*Id.* at 709 (citations omitted). New York Courts have consistently held that the UCC does not apply to contracts that are predominately for the rendition of work, labor, and services rather than for the sale of goods. *See Amendola v. Basement Waterproofing Co.*, 203 A.D.2d 403, 403 (N.Y. App. Div. 1994). "To determine whether a contract is one for services or [for the] sale [of goods]," it is necessary to "look[] to the essence of the agreement to see whether service predominates over any sale aspect." *Manes Org. Inc. v. Standard Dyeing & Finishing Co.,* 472 F. Supp. 687, 690 n.3 (S.D.N.Y.1979); *Levine v. Sears Roebuck & Co.,* 200 F. Supp. 2d 180, 191-92 (E.D.N.Y.2002).

Here, Del Gatto undoubtedly only provides services—not goods: "We operate the DELGATTO/IDNID Service solely to enable people to sell and buy items. DELGATTO/IDNID itself never acquires, holds, or transfers title to any item." Compl., Exhibit A, ¶ 14. Accordingly, the Disclaimer of Warranties relied upon by Del Gatto is entirely inapplicable to any of Plaintiff's claims and is certainly no basis for dismissing the Breach of Contract claim set forth in the Complaint.[6]

### 2. "Impracticability" Does Not Absolve Del Gatto of Liability.

Del Gatto next asserts an affirmative defense of "impracticability," arguing that Plaintiff's breach of contract claim must be dismissed because COVID-19 made it objectively impossible for the company to comply with its contractual obligations. Not only is that argument entirely without merit, but it also is premature.

---

[6] Del Gatto also in passing—and without support—broadly proclaims that the company "is exculpated from being held liable for damages by virtue of the Release." Brief at 9. Plaintiff, of course, disagrees and believes discovery will reveal that Del Gatto purposely withheld payments from him and hundreds of others to unlawfully retain profits and interest at the expense of its customers. Del Gatto cannot simply sell customers' jewelry only to later claim in a brief that it owes the sellers no money. Del Gatto also seemingly addresses class certification in its motion to dismiss, Brief at 9-10, but does not move to strike any class action allegations. That premature argument therefore has no impact on Plaintiff's Complaint.

As the court in *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20 Civ. 4644, 2021 WL 705880, at *7 (S.D.N.Y. Feb. 22, 2021), recently recognized, commercial "impracticability" must "meet the same high standard for impossibility" outlined in *Kel Kim Corp v Central Markets*, 70 N.Y.2d 900, 902 (N.Y. 1987). The Court in *Kel Kim* set a very high bar for the defense:

> Generally, once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome; until the late nineteenth century even impossibility of performance ordinarily did not provide a defense. While such defenses have been recognized in the common law, they have been applied narrowly, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances. Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible.

70 N.Y.2d at 902 (citations omitted). "[W]hile New York courts excuse a party from performing obligations that are 'impossible' to perform, . . . 'impossibility' does not excuse performance of a contract merely because the performance would be burdensome or unprofitable." *CAI Rail, Inc.*, 2021 WL 705880, at *7.

To prevail on such a defense, Del Gatto must prove that it was absolutely impossible to issue a check to Plaintiff for a period of more than five months (spanning from the original payment deadline in August 2020 through January 2021 when Plaintiff's Complaint was filed). That seems quite unlikely given Del Gatto's continued ability during COVID-19 to accept shipments of jewelry, inspect and authenticate jewelry (a presumably "hands on" process), ship jewelry to buyers, and collect payments from buyers. Compl. ¶¶ 37-55. Del Gatto was able to continue nearly all its core business functions save for fulfilling its payment obligations to Plaintiff and hundreds of other jewelry owners.

11

Either way, an impossibility analysis is premature at this stage. Del Gatto would be required to introduce evidence concerning its inability to issue checks, and that evidence is outside the four corners of the Complaint. Del Gatto's self-serving declaration cannot be considered on a motion to dismiss, despite its attempts to sprinkle additional evidence throughout its motion. There are far too many factual disputes for any dispositive decision on such a defense, and at best, Del Gatto can raise the issue after discovery has proceeded.

Del Gatto's cited authorities lend no support to its argument. For example, in *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, No. 20CV4370 (DLC), 2020 WL 7405262, at *9 (S.D.N.Y. Dec. 16, 2020), the entire contract was terminated when an auction had to be cancelled, and there was a valid *force majeure* clause that applied. But here, Del Gatto never sought to cancel the contract—rather, it only sought to extend its payment obligation indefinitely, apparently at its discretion. The Court should swiftly reject Del Gatto's argument.

**D. Plaintiff Properly Pled a Claim under New York General Business Law § 349.**

Del Gatto argues that Plaintiff cannot claim violations of New York General Business Law Section 349 as an out-of-state resident even though: (1) Del Gatto is a New York business, (2) Del Gatto receives, authenticates, and processes the jewelry deliveries and sales within New York, (3) Del Gatto withholds payments from its New York location, and (4) Del Gatto required Plaintiff and other consumers to agree to Terms of Use with a New York choice-of-law provision for "any disputes." Del Gatto's argument lacks merit.

Under General Business Law Section 349, deceptive acts and practices "*in this state* are hereby declared unlawful." (Emphasis added.) Purely out-of-state conduct does not automatically fall within its umbrella. Contrary to Del Gatto's arguments, though, the analysis "does not turn on the residency of the parties." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002).

12

General Business Law Section 349 was never intended "to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state." *Id.* Indeed, "New York courts would apply a New York consumer protection law to a transaction that occurred in New York." *In re AMLA Litig.*, 328 F.R.D. 127, 132 (S.D.N.Y. 2018).

Here, Del Gatto's refusal to issue payment to Plaintiff (and the surrounding conduct) falls squarely within the geographic limits of New York. Del Gatto's cited cases are therefore easily distinguishable as cases focused on deceptive out-of-state conduct. *See Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010) (plaintiffs "failed to plead the essential act that must have transpired within the boundaries of the state to maintain a viable suit under GBL § 349"), *aff'd*, 474 F. App'x 5 (2d Cir. 2012); *Pentair Water Treatment Co. v. Cont'l Ins., Inc.*, No. 08 Civ. 3604, 2009 U.S. Dist. LEXIS 39932, at *12 (S.D.N.Y. Apr. 21, 2009) (plaintiffs failed to tie any allegations to actual conduct in New York); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) (deception occurred out of state where deceptive statement mailed to New Jersey resident).

In any event, Del Gatto ignores its own choice-of-law provision in Paragraph 20 of its Terms of Use, which provides: "If you have *any dispute* with [Del Gatto], the dispute will be governed by the laws of the State of New York without regard to its conflict of law provisions." Compl. Exh. A, at para. 20 (emphasis added). That dispositive provision is broad in nature and expressly contemplates Plaintiff's claim under General Business Law Section 349. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (so long as contractual provision is "'sufficiently broad' as to encompass the entire relationship between the contracting parties," choice of law is applicable to non-contractual claims). Del Gatto's argument therefore is belied by its own contractual language.

E.  **Plaintiff Properly Pled a Claim for Unjust Enrichment in the Alternative.**

Plaintiff's claim for unjust enrichment may overlap with its breach-of-contract claim, but it is premature at the pleadings stage for dismissal. Plaintiff may plead claims in the alternative. *See* Fed. R. Civ. P. 8(a). However, Plaintiff is willing to withdraw its unjust enrichment claim so long as Del Gatto concedes the validity of the contract at issue in this litigation (the Terms of Use attached to Plaintiff's Complaint). *See Bentivoglio v. Event Cardio Grp., Inc.*, No. 18-cv-2040 (PKC), 2019 U.S. Dist. LEXIS 206381, at *19 (S.D.N.Y. Nov. 27, 2019) (dismissing unjust enrichment claim where plaintiff offered to withdraw so long as defendant conceded validity of contract); *AFP Mfg. Corp. v. AFP Imaging Corp.*, No. 17-CV-03292 (NSR), 2018 U.S. Dist. LEXIS 112767, at *32 (S.D.N.Y. July 5, 2018) (dismissing unjust enrichment claim where both parties agreed that contract was valid).

F.  **Conclusion**

Because each of Del Gatto's arguments lacks merit, the Court should deny in full its motion to dismiss. Additionally, should the motion be granted in any respect, Plaintiff requests leave to amend.

Dated: March 17, 2021                                Respectfully submitted,

/s/ *Brian R. Morrison*
Brian R. Morrison (BM-1986)
Ariana J. Tadler (AT-0452)
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY  10119
Telephone: (212) 946-9300
Fax: (929) 207-3746
bmorrison@tadlerlaw.com
atadler@tadlerlaw.com

14

Brian W. Warwick (*admitted pro hac vice*)
Mathew Peterson (*admitted pro hac vice*)
**VARNELL & WARWICK, P.A.**
1101 E. Cumberland Ave,
Suite 201H, #105
Tampa, FL 33602
Telephone:  352-753-8600
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com

Christopher J. Brochu
(*admitted pro hac vice*)
**LAW OFFICE OF CHRISTOPHER J. BROCHU, PLLC**
One Call Tower
841 Prudential Drive, Suite 1200
Jacksonville, Florida 32207
904-201-1771 (telephone)
904-429-4218 (facsimile)
c.brochu@brochulaw.com

*Attorneys for Plaintiff Christopher Polk, and on behalf of all others similarly situated.*

15