UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER POLK, et al.,

                                    Plaintiffs,

                -v-

DEL GATTO, INC.,

                                    Defendant.

21 Civ. 129 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Christopher Polk ("Polk") brings this putative class action against Del Gatto, Inc. ("Del Gatto"), an online jewelry reseller, alleging that Del Gatto failed to pay him and other jewelry sellers for months after the payment date specified in the parties' contract. Polk brings claims for (1) breach of contract; (2) deceptive and unfair trade practices in violation of New York General Business Law ("GBL") § 349; and (3) common law unjust enrichment.

Pending now is Del Gatto's motion to dismiss, on several grounds, Polk's Complaint ("Compl.") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Del Gatto argues that its offers of payment to Polk mooted this case and eliminated this Court's subject-matter jurisdiction. Second, Del Gatto argues that the Complaint does not state a breach of contract claim because its website's Terms of Use disclaimed liability for delayed payments, because Polk lacks standing under and otherwise fails to plead a viable claim under GBL § 349, and because Polk's unjust enrichment claim is redundant.[1] For the following reasons, the Court

---

[1] Del Gatto also argues, in passing, that Polk's proposed class would not be manageable. Def. Mem. at 9–10. That argument is premature at the motion to dismiss stage. *See, e.g., Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464–65 (S.D.N.Y. 2013) (finding premature defendant's argument, on motion to dismiss, that plaintiffs would be unable to satisfy Rule 23(a)(2)'s

denies the motion to dismiss based on lack of subject-matter jurisdiction and as against Polk's

breach of contract claim, but grants it as to Polk's GBL and unjust enrichment claims.

## I.    Background

### A.    Factual Background[2]

Del Gatto, a Delaware corporation with its principal place of business in New York City,

owns a "consumer-to-consumer jewelry marketplace," "I Do Now I Don't" (IDNID), through

which individuals can buy and sell jewelry, including engagement rings.  Compl. ¶¶ 2, 14, 15, 19.

Del Gatto itself acts as a clearinghouse, verifying the quality and authenticity of the goods sold

through its platform and taking a cut of the proceeds of each sale.  *Id.* ¶¶ 2, 16, 24.  Sellers list

their pieces on Del Gatto's website and set prices; buyers pay Del Gatto; Del Gatto takes a

commission (depending on the price) of between 10% and 25% of the sales price and instructs

---

commonality requirement); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (motions to strike class allegations are disfavored and generally premature). Del Gatto's argument is instead properly made in response to a motion for class certification.

[2] This account mainly draws from the Complaint, Dkt. 1, and the exhibits incorporated therein, *see* Compl. Exs. A to F.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  Here, the Complaint incorporates by reference and makes integral the "Terms of Use" agreement, Compl., Ex. A ("TOU"), and emails between parties, *id.*, Exs. B to F; the Court thus considers these documents in deciding Del Gatto's motion under both Rule 12(b)(1) and 12(b)(6).

For the facts relevant to the Court's subject-matter jurisdiction, the Court also draws from the supporting declaration Del Gatto filed, Dkt. 17 ("Opperman Dec'l").  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

For the purpose of resolving the motion to dismiss under both Rule 12(b)(6) and 12(b)(1), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

the seller to send his or her jewelry to Del Gatto's headquarters to be examined and shipped to the buyer. *Id.* ¶¶ 24, 42. Finally, Del Gatto pays the seller. *Id.* ¶¶ 15, 38–43.

Del Gatto requires its site's users (buyers and sellers of jewelry) to agree to its TOU. *Id.* ¶ 21. Del Gatto "expressly advertises and promises in" the TOU that it will pay the seller on the 15th day of the month following his or her sale. *Id.* ¶ 4; TOU.

Polk, a Florida resident and citizen, became engaged but, in late 2018, separated from his erstwhile fiancée. Compl. ¶ 32. He decided to sell the engagement ring. *Id.* After "thoroughly research[ing]" Del Gatto by reading through its website and marketing materials, he decided to list his ring on its site in January of 2020 for $4,000. *Id.* ¶¶ 33, 36. Del Gatto approved Polk's listing almost immediately. *Id.* ¶ 36.

On or about June 11, 2020, a buyer paid Del Gatto $4,000 for Polk's engagement ring. *Id.* ¶¶ 37–38. On or about June 16, 2020, Polk shipped the ring to Del Gatto's New York address; on June 22, 2020, Del Gatto received the ring. *Id.* ¶¶ 39–41. After Del Gatto's gemologist reviewed and approved the ring, Del Gatto sent it to the buyer. On or about July 31, 2020, the buyer received the ring. *Id.* ¶¶ 42–43. Based on the 20% commission set out in the TOU for jewelry in that price range, Del Gatto would have been entitled to $800, and Polk to $3,200. *Id.* ¶¶ 24, 44; TOU ¶ 5.

Polk expected payment by August 15, 2020, because the TOU states that "[p]ayments for all . . . sales are issued on the 15th of every month for any items that have sold" in "the month prior." TOU ¶ 9.7. By August 18, 2020, Polk still had not received payment, and sent the first of many emails to Del Gatto asking why he had not yet been paid. Compl. ¶ 46. In an email response sent the same day, Del Gatto told him that Del Gatto's payment department would contact him; but it never did. *Id.* Polk emailed Del Gatto again on August 26, 2020; that same

3

day, Del Gatto sent a boilerplate email in response, stating that its New York office had been closed since March 2020 due to the COVID-19 pandemic and that it would "resolve any issues as quickly as possible." *Id.*, Ex. B ("Since March 16 due to the Covid-19 crisis, our office, which is in New York City, has been physically closed. We are still working remotely, however we will do our best to answer emails, phone calls and resolve any issues as quickly as possible."). Polk sent a third email on September 1, 2020, again requesting a payment status update, and received a reply identical to the August 26, 2020 response, but also acknowledging Del Gatto's "payment commitment" to Polk. Compl. ¶¶ 48, 49. Polk sent a fourth email on September 26, 2020, and a fifth on October 12, 2020; to each, he received a response identical to Del Gatto's boilerplate August 26 email. *Id.* ¶¶ 50, 51. On October 12, 2020, Del Gatto, in addition to sending its August 26 boilerplate response, emailed Polk to say that the company was "working to get caught up" on "payment distribution[]," and that it would contact Polk when his check was issued. *Id.* ¶ 52. On November 8, 2020, still empty-handed, Polk sent a sixth email update request, and once again received a copy of the August 26 boilerplate. *Id.* ¶ 53.

Having received no further information from Del Gatto, Polk reviewed complaints filed by Del Gatto's customers with the Better Business Bureau. He found many which "echo[ed] [his] own experience . . . . Del Gatto has held onto jewelry and/or payments without paying sellers as obligated under its own contractual requirements." *Id.* ¶ 7.

On January 7, 2021, Polk filed this lawsuit. On February 4, 2021, about a month later, according to Del Gatto, the company finally sent Polk a check.[3] Opperman Decl. ¶ 39.

---

[3] The parties agree in their briefs that the check was for $3,400. Dkt. 21 ("Opp'n") at 2; Dkt. 24 ("Reply") at 3. Del Gatto characterizes this amount as "the full amount due and owing" to Polk. Opperman Decl. ¶ 39. Importantly, both parties also agree that Polk never cashed this check. Opp'n at 2; Reply at 3.

**B.      Procedural History**

The Complaint brings claims for breach of contract, deceptive acts and practices in violation of GBL § 349, and unjust enrichment. Compl. ¶¶ 88, 93, 106. On February 24, 2021, Del Gatto moved to dismiss, Dkt. 16, and filed a supporting memorandum of law, Dkt. 18 ("Def. Mem."), arguing for dismissal under Rules 12(b)(1) and 12(b)(6). On March 17, 2021, Polk filed a memorandum of law in opposition, Opp'n. On March 31, 2021, Del Gatto filed a reply brief, Reply.

**II.     Legal Standards Governing Motions to Dismiss**

A court properly dismisses a claim pursuant to a Rule 12(b)(1) motion if it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In resolving a motion to dismiss under Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Johnson*, 461 F.3d at 171 (citation omitted). But "a court is not limited to the face of the complaint and may consider evidence outside the

---

In its reply, Del Gatto claims, for the first time, to have made Polk an offer for $12,500. *See* Reply at 2. The Court disregards this factual representation, which has not been attested to outside of the Reply. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (on a motion to dismiss for lack of subject-matter jurisdiction, "we may not rely on conclusory or hearsay statements contained in the affidavits"); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 722 (PAE), 2012 WL 4849146, at *5 (S.D.N.Y. Oct. 12, 2012); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 581 (S.D.N.Y. 2010); *see also Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."). In any event, for the reasons discussed *infra*—including Del Gatto's failure to make an offer of judgment to Polk—this fact, even if considered, would not alter the outcome here.

pleadings to resolve disputed factual issues." *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5540 (FM), 2012 WL 1592520, at *5 (S.D.N.Y. May 2, 2012) (citing *State Emp. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007)); *see Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d at 1011 ("[W]hen . . . subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145; *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.    Discussion

At the threshold, the Court must determine whether it has subject-matter jurisdiction over this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"

(quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884))).  Finding that there is such jurisdiction, the Court reaches Del Gatto's Rule 12(b)(6) motion, and sustains Polk's breach of contract claim, but dismisses the others.

### A.   Subject-Matter Jurisdiction

In moving to dismiss for lack of subject-matter jurisdiction, Del Gatto relies on its post-Complaint act of sending Polk a $3,400 check.[4]  It argues that there is no longer a justiciable dispute, as this sum represents the "full amount due and owing" to Polk.  Polk counters that, because he did not view the $3,400 check as fully compensatory, he declined to cash the check or drop this claim.[5]  Opp'n at 2.  Del Gatto's motion lacks merit.  That is because, even assuming that Del Gatto's cash offer was sufficient to fully compensate Polk, it would not have mooted Polk's case absent an offer of judgment along with the money.

In 2016, the Supreme Court held, in *Campbell-Ewald v. Gomez,* 577 U.S. 153 (2016), that an unaccepted settlement offer or offer of judgment has no force.  Rather, "[l]ike other unaccepted contract offers, it creates no lasting right or obligation.  With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists," and the court retains subject-matter jurisdiction. *Id.* at 156.  Since *Campbell-Ewald,* the Second Circuit has refined this doctrine.  Its decisions since

> appear to recognize that where a defendant surrenders to "complete relief" in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto—and "[t]hen, after judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III."

---

[4] As noted in footnote 3, *supra,* the parties agree that Del Gatto sent Polk a check in this amount.

[5] It is undisputed that Polk did not cash Del Gatto's check.  Opp'n at 2; Reply at 1.

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.* ("*Geismann III*"), 909 F.3d 534, 542 (2d Cir. 2018) (quoting *Tanasi v. New Alliance Bank*, 786 F.3d 195, 200 (2d Cir. 2015)).

Under this line of case law, however, for a rejected settlement offer to moot a claim, the defendant must first request that the court enter *judgment* for the full amount potentially owed to the plaintiff. Only then may the court dismiss the case as moot. Although a formal Rule 68 offer is not necessary to so moot a claim, "the defendant [must] offer[] *judgment*, rather than *settlement without judgment*, resolving all points in dispute and leaving no conflict over the 'nature and form' of settlement." *Cabala v. Crowley*, 736 F.3d 226, 230 (2d Cir. 2013) (emphasis added); *see also Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80–81 (2d Cir. 2013) (holding that informal but fully satisfactory offer which included offer of judgment sufficed to moot plaintiff's claim, even though it was not brought under Rule 68); *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 631 (S.D.N.Y. 2014) ("[T]o moot a plaintiff's claim, the defendant must make an offer of judgment; an offer of settlement is insufficient.").

Del Gatto's theory as to why this case is moot therefore fails. Del Gatto does not claim, let alone establish, that it offered judgment to Polk. No amount of cash alone would moot Polk's case, but that is all Del Gatto purports to have tendered. *See* Def. Mem. at 1 ("Upon receiving notice of suit, Del Gatto tendered Polk payment in full . . . ."), 2 ("Del Gatto offered Polk additional compensation which would make him more than whole . . . ."), 7 ("Del Gatto since tendered payment to Plaintiff and . . . a check for the full amount due."); *see also* Reply at 4 (distinguishing the present case from past precedent on the basis that "Del Gatto has tendered full payment to Plaintiff, whereas in both *Campbell-Ewald Co.* and *Geismann*, Defendants attempted to settle with Plaintiffs pursuant to Rules 68 and 67").

The Court therefore retains subject-matter jurisdiction.[6]

## B.     Breach of Contract Claim

Polk's breach of contract claim is based on Del Gatto's TOU, which is governed by New York law.[7] His Complaint alleges that Del Gatto breached its contract by failing to pay Polk by the 15th of the month following the sale of his jewelry, as the TOU required. *See* Compl. ¶ 88; TOU ¶ 9.7 ("Payments for all . . . sales are issued on the 15th of every month for any items that have sold and passed authentication from the first day to the last day of the month prior."). In pursuing dismissal, Del Gatto relies on two provisions in its TOU, the "Disclaimer of

---

[6] In any event, Del Gatto's theory that the check it sent Polk eliminates subject-matter jurisdiction fails for two other reasons.

First, the offer was not clearly fully compensatory, as it must be for a district court to override a plaintiff's rejection of a settlement offer. *See Geismann III*, 909 F.3d at 543 ("[A] district court may not take that approach unless the defendant surrenders to the '*complete* relief' sought by the plaintiff." (quoting *Tanasi*, 786 F.3d at 200) (emphasis in *Geismann III*)). If the parties have "divergent legal theories regarding the amount of damages available," "[t]hat constitutes a live controversy precluding dismissal on the basis of mootness." *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.* ("*Geismann II*"), 850 F.3d 507, 513 (2d Cir. 2017). Here, however, it is factually disputed whether $3,400 would fully compensate Polk, and whether Polk, as he claims, is owed attorneys' fees. Because there remains a live controversy as to the sufficiency of the check, the case may not be dismissed as moot.

Second, Polk's claim is a putative class action, but Polk has not yet had the opportunity to attempt to certify the putative class, which consists of aggrieved consumers of the IDNID service. "[A] defendant is no longer able to moot a putative class action by tendering payment to a named plaintiff and asking the court to enter judgment against it over the plaintiff's objection." *Brady v. Basic Rsch., LLC*, No. 13 Civ. 7169 (SJF), 2016 WL 1735856, at *2 (E.D.N.Y. May 2, 2016). Therefore, when a plaintiff has rejected all individual settlement offers before resolution of a class-certification motion, "the district court must resolve the pending motion for class certification *before* entering judgment and declaring an action moot based solely on relief provided to a plaintiff on an individual basis." *Geismann III*, 909 F.3d at 543.

[7] The TOU's choice-of-law provision reads, in relevant part: "If you have any dispute with us, the dispute will be governed by the laws of the State of New York without regard to its conflict of law provisions." TOU ¶ 20. The parties, in turn, treat New York law as governing. *See* Def. Mem. at 9; Opp'n at 13; *see also Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (parties' consent is "sufficient to establish the applicable choice of law" (citation omitted)).

Warranties" and the "Release," which it contends broadly shelter it from "any damages or liability arising from delays or inoperability of the IDNID service." Def. Mem. at 8.  In the alternative, Del Gatto argues that it has a viable affirmative defense: it could not pay Polk in a timely manner due to pandemic-induced shutdowns, and should be excused from contractual obligations that were impractical to meet.  Def. Mem. at 2.  These arguments all fail to justify dismissal.

### 1. The "Disclaimer of Warranties"

The TOU defines the "IDNID Service" as "the IDNID Website . . . and its related services." TOU ¶ 1.  The TOU's "Disclaimer of Warranties" paragraph, on which Del Gatto relies, reads:

> THE IDNID SERVICE IS PROVIDED ON AN "AS IS" OR "AS AVAILABLE" BASIS WITHOUT ANY WARRANTIES OF ANY KIND.  ALL EXPRESS AND IMPLIED WARRANTIES ARE EXPRESSLY DISCLAIMED TO THE FULLEST EXTENT PERMITTED BY LAW.  IDNID EXPRESSLY DISCLAIMS ANY WARRANTY THAT THE IDNID SERVICE WILL ALWAYS BE AVAILABLE OR THAT IT WILL OPERATE ERROR-FREE, AND EXPRESSLY DISCLAIMS ANY LIABILITY FOR (i) ANY INTERRUPTIONS TO THE AVAILABILITY OF THE SERVICE, WHETHER SUCH INTERRUPTIONS, ARE DUE TO INTERNET EVENTS BEYOND DELGATTO/IDNID'S CONTROL, TO PROBLEMS WITH THE IDNID SERVERS, OR TO PROBLEMS WITH YOUR COMPUTER OR YOUR INTERNET CONNECTION . . . .

*Id.* ¶ 17.

Del Gatto argues that this paragraph "disclaimed liability for any interruption in its service, such as the interruption in remitting payment to sellers of jewelry during the pandemic," and thus immunizes Del Gatto from Polk's claim of breach.  Def. Mem. at 2.  Polk counters that this provision does not shield Del Gatto from liability because, under New York law, no warranty attaches to the performance of a service.  *See* Opp'n at 9–10 (citing *Brown v. Neff*, 603 N.Y.S.2d 707, 709 (1993) ("[A] cause of action for breach of warranty requires an underlying

transaction of a kind which generates a warranty"—*i.e.*, one governed by the Uniform Commercial Code and thus the sale of a good, since "the Uniform Commercial Code does not apply to the rendition of services for a price.")). Polk contends that, because the transaction between IDNID and Polk is for the provision of a service—IDNID serves as a middleman between buyers and sellers of jewelry—the warranty does not vitiate his breach of contract claim. Opp'n at 10.

Polk's legal argument misreads New York law. *Brown* merely states that a breach of warranty claim requires an appropriate underlying transaction—the sale of a good, not a service. But that does not make disclaimers of warranties irrelevant in a *breach of contract* action such as this, and Polk does not cite authority to this effect. To the contrary, warranty disclaimers in contracts for services can preclude certain breach of contract claims, and New York courts have relied on such disclaimers to dismiss breach of contract claims even when the contracts are for services.[8]

But Polk's contract claim survives dismissal under this disclaimer for a different reason: The disclaimer does not clearly cover the breach alleged in the Complaint—and thus it cannot justify dismissal on the pleadings. Del Gatto's theory is that its months-long delay in paying

---

[8] *See, e.g., Elgie & Co. v. S.S.S.A. Nederburg*, 599 F.2d 1177, 1183 (2d Cir. 1979) (disclaimer of warranty provision in contract for services immunized the defendant company from liability in a breach of contract action); *Int'l Gateway Exch., LLC v. W. Union Fin. Servs.*, 333 F. Supp. 2d 131, 143 (S.D.N.Y. 2004) ("[D]isclaimers of warranties with respect to the services provided by both parties" prevented a party from bringing a breach of contract claim because they were "unambiguous and enforceable under New York law."); *Scott v. Bell Atl. Corp.*, 282 A.D.2d 180, 185 (1st Dep't 2001) ("As for the plaintiffs' causes of action sounding in breach of warranty and breach of contract, it would be highly unlikely . . . that a reasonably prudent consumer would rely on the representations in the face of the Service Agreement's conspicuous, unequivocal disclamations concerning any warranties as to, *inter alia*, disruptions or errors in service.").

Polk qualified as a mere "interruption[]" in service, and thus fell within the disclaimer. TOU ¶ 17.2. But, for two reasons, that cannot be found on the pleadings, if at all.

First, the text of the disclaimer for "interruptions" suggests that it may not apply at all to the situation at hand. The disclaimer's context suggests that the "interruptions" it contemplates are ones due to short-term technical issues. *See id.* ¶ 17.2 ("IDNID . . . expressly disclaims any liability for (i) any interruptions to the availability of the service, whether such interruptions are due to Internet events beyond DelGatto/IDNID's control, to problems with the IDNID servers, or to problems with your computer . . . ."). The delay here, however, as pled, lasted seven months, and was not due to a technical snafu. Del Gatto does not point to any contract language defining the term "interruption" to, improbably, cover extended failures on its part to carry out its central duty to Polk: to pay him for the engagement ring he entrusted Del Gatto to sell on his behalf. Because the TOU does not define "interruption," there is no basis—other than Del Gatto's say-so—to imagine that that term reached beyond temporary website crashes and the like to cover a durable failure on Del Gatto's part to perform.

The Court need not definitively resolve on the pleadings the reach of this disclaimer. It suffices to say that Polk may well ultimately prevail in reading the disclaimer not to cover the situation here. At a minimum, based on its text alone, the language of the disclaimer is neither "definite" nor "precise," with a "reasonable basis for a difference of opinion" over its scope, *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, N.A., 773 F.3d 110, 114 (2d Cir. 2014), and further litigation—and a showing by Del Gatto that is thus far absent—would be necessary before Del Gatto's improbable construction were adopted. Because the Court finds (at best for Del Gatto) the disclaimer ambiguous, resolving its meaning must be determined after discovery, at summary judgment or trial. *See New Windsor Volunteer Ambulance Corps, Inc., v. Meyers,*

442 F.3d 101, 111 (2d Cir. 2006) ("[I]f the contract is ambiguous and relevant extrinsic evidence as to its meaning is available, its interpretation is a question of fact for the factfinder."); *Chambers v. HSBC Bank USA, N.A.*, No. 19 Civ. 10436 (ER), 2020 WL 7261155, at *3 (S.D.N.Y. Dec. 10, 2020) ("If a material contractual term is ambiguous, . . . dismissal is inappropriate because all contractual ambiguities must be resolved in favor of the plaintiff at this stage.").

Second, even if Del Gatto's broad construction of the disclaimer term "interruption" were accepted, there would be a factual question as to whether the delay alleged here so qualified. The facts alleged must be read in the light most favorable to Polk, as the non-movant. Polk claims that Del Gatto had nearly seven months in which to pay, but that it repeatedly stiffed Polk. The facts alleged would easily supply an alternative explanation apart from Del Gatto's notion that some form of "interruption" impeded Del Gatto from performing. With Del Gatto's having paid up only after Polk filed a federal complaint, the inference is plausible, if not strong, that, far from being disabled by some form of exogenous "interruption," Del Gatto willfully flouted its duty under the contract to pay its customer, and heeded that duty only after being haled into federal court. The need for discovery into the basis for Del Gatto's failure to furnish Polk the money that, as pled, he was contractually due independently defeats Del Gatto's bid on this basis for dismissal.

### 2.   The "Release"

Del Gatto next relies on a TOU paragraph entitled "Interaction and Disputes with Other Users; Release" (the "Release"). TOU ¶ 15. It states, in relevant part:

> If there is a dispute between any Seller and any Buyer, between any Buyer or Seller and UPS, between any other Users, or between Seller or Buyer and any third party. . . DELGATTO/IDNID is under **no obligation** to become involved, and you hereby **release** DELGATTO/IDNID . . . from claims, demands and damages (actual and consequential)

of every kind or nature . . . arising out of or in any way related to such disputes and/or the
DELGATTO/IDNID Service.

*Id.* (emphasis in the original). In pursuing dismissal, Del Gatto seizes on the phrase releasing
Del Gatto from "damages (actual and consequential) of every kind or nature . . . arising out of or
in any way related to . . . the Del Gatto/IDNID Service." Def. Mem. at 5 (quoting TOU ¶ 15).
But its argument that this language excuses its retention of the funds due to Polk selectively—
and misleadingly—presents this language, which, read in context, says nothing of the sort.

In New York, "[a] release will not be given effect unless it contains an explicit,
unequivocal statement of a present promise to release a party from liability." *Golden Pac.
Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) (cleaned up). "New York law considers
the context as a key factor in interpreting a release. Where the release presents a specific
context, the released claims are interpreted in this light." *In re Actrade Fin. Techs., Ltd.*,
424 B.R. 59, 71 (Bankr. S.D.N.Y. 2009) (citation omitted); *see, e.g., Green v. Lake Placid 1980
Olympic Games, Inc.*, 147 A.D.2d 860, 862 (3d Dep't 1989) (holding that release reciting
specific claims and ending with general release should not be read to cover more claims than
parties initially contemplated). As the Court of Appeals has noted,

> [W]hile it has been held that an unreformed general release will be given its full
> literal effect where it is directly or circumstantially evident that the purpose is to
> achieve a truly general settlement, the cases are many in which the release has been
> avoided with respect to uncontemplated transactions despite the generality of the
> language in the release form.

*Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969) (citation omitted).

Here, Del Gatto myopically focuses on the excerpt of the Release quoted above, *see* Def.
Mem. at 5. But the Release paragraph, viewed as a whole, is addressed to disputes between third
parties on the IDNID platform—buyers, sellers, and UPS. It does not focus on disputes between
Del Gatto and third parties—such as, in this case, the seller, Polk, who entrusted his engagement

ring to Del Gatto to sell. That is evident from a review of the Release language in totality. And the text of the Release, read holistically, does not suggest that Del Gatto and the sellers who used its platform agreed, improbably, to absolve Del Gatto of all responsibilities arising from use of its service, including merchant Del Gatto's core duty not to pocket all of the money that the buyer paid for seller Polk's engagement ring. Far from being plausible, Del Gatto's construction of the Release language to allow it, with impunity, to keep the money it received that was earmarked for seller Polk is implausible and frivolous.

The Release thus does not justify dismissal of the Complaint.

### 3.    Del Gatto's Impracticability Defense

Finally, Del Gatto argues that it is entitled to dismissal based on the affirmative defense of "impracticability" that it asserts against Polk's breach of contract claim. Del Gatto proffers that it was unable to perform its contractual duty to pay Polk the funds due from the sale of the engagement ring because of impediments arising from the COVID-19 pandemic. *See* Def. Mem. at 10–13.

The short answer is that, while such a defense may ultimately prove meritorious, that may not—as Polk correctly notes—be determined on the pleadings. *See* Opp'n at 12.

> Resolution of the defense of impossibility requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of such fault. In all but the clearest cases this will involve issues of fact that must be resolved by the district court only after the parties have had adequate opportunity to investigate and present their evidence.

*Lowenschuss v. Kane*, 520 F.2d 255, 265–66 (2d Cir. 1975) (addressing motion for summary judgment on this ground); *see also In re MG Refining & Mktg., Inc. Litig.*, No. 94 Civ. 2512 (SS), 1997 WL 23177, at *7 (S.D.N.Y. Jan. 22, 1997) (applying *Lowenschuss* in denying motion to dismiss based on affirmative defense of impossibility); *Rivas Paniagua, Inc. v. World Airways Inc.*, No. 87 Civ. 55 (PKL), 1987 WL 5121, at *1 (S.D.N.Y. June 2, 1987) ("The availability of

the defense of impossibility" on a motion to dismiss "clearly depends on factual issues which have yet to be determined and which are not before the Court at this juncture.").[9] So, too, here. Whether Del Gatto was truly incapacitated by the pandemic to the degree that it could not pay Polk his $3,400 until seven months had passed and Polk had brought this lawsuit cannot be resolved without fact discovery.

The Court accordingly denies the motion to dismiss Polk's breach of contract claim.

## C.     GBL § 349 Claim

The Complaint next alleges that Del Gatto committed deceptive and unfair trade practices in violation of GBL § 349, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). Del Gatto moves to dismiss the GBL claim for three reasons: (1) Polk, a Florida resident, lacks standing to bring a claim under GBL § 349; (2) Polk's Complaint does not plead this claim with specificity; and (3) the claim is duplicative of his breach of contract claim. Def. Mem. at 13. This motion is meritorious: Although Polk has standing to pursue such a claim, it is duplicative.

### 1.     Standing

In 2002, the New York Court of Appeals held that, for a claim to be actionable under GBL § 349, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002). The statutory phrase "in this state," the Court of Appeals held, refers to "the conduct of any business, trade or commerce or in the furnishing of any service." *Id.* at 321, 325.

---

[9] In New York, the defenses of impracticability and impossibility are identical. *See Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018) (summary order) ("[U]nder New York law, impossibility . . . is treated synonymously with impracticability.").

A split of authority arose as to the circumstances in which GBL § 349 claims may be brought by persons who do not reside in New York.  In 2013, the Second Circuit explained the competing views and set out its test, which focused on the location of the transaction:

> [W]e recognize that a split of authority has developed subsequent to *Goshen* about the appropriate territorial test to employ under sections 349 and 350: a 'transaction-based' test on the one hand, or, on the other hand, a test premised on where the victim is deceived, regardless of where the transaction occurs. Mindful of that split, and mindful too that the two tests are not mutually exclusive, we think the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'  *Id.* at 325. . . . [A] deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349.

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122–123 (2d Cir. 2013) (quoting *Goshen*, 98 N.Y.2d at 325).  *Cruz* "involve[d] a series of allegedly deceptive transactions that occurred in New York and implicate[d] the interests of New York."  720 F.3d at 123.  Various aspects of the defendant's operations, the Circuit noted, demonstrated a sufficiently strong connection to the state to permit the plaintiff's GBL claim to proceed.  These included that the defendant: (1) was "paid in New York," held customer accounts in New York, and "refuse[d] to disburse funds from customer accounts until it receive[d a form] at its New York office"; (2) "require[d] that all customer communications . . . be sent to its New York office"; and (3) required customers to agree to a New York choice-of-law provision.  *Id.* at 118, 123–124.

Similarly, in *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016), also involving online transactions, a court in this District permitted a section 349 claim to go forward.  Although the plaintiff was not a New York resident and had used the defendant's smartphone application solely outside of New York, the court noted that: (1) the company "apparently processes customer payments in New York where it is based"; (2) the company's

"music servers [were] in New York"; (3) the user agreement contained a New York choice-of-law provision; and (4) "it [was] a fair inference that the users' music selections are transmitted electronically to [defendant's] New York servers." *Id.* at 633 (citation omitted)).

Here, notwithstanding Polk's Florida residence, the facts pled sufficiently closely echo those in *Cruz* and *TouchTunes* to support finding—at least at this stage—that he has standing to pursue his section 349 claim against Del Gatto. In particular: (1) the choice-of-law provision in Del Gatto's TOU makes New York law controlling over all disputes, *see* TOU ¶ 20 ("If you have any dispute with us, the dispute will be governed by the laws of the State of New York"); (2) Del Gatto receives payments and jewelry at, and processes sales through, its New York office, *see* Compl. ¶¶ 12 ("Del Gatto regularly conducts business, marketing, distributing, promoting and/or selling . . . from its principal office located in New York."), 38 ("the Buyer paid Del Gatto for Plaintiff's engagement ring"), 39 ("Del Gatto's customer care team e-mailed Plaintiff . . . and instructed Plaintiff to mail the ring to its New York address"), 43 ("the Buyer received Plaintiff's engagement ring from Del Gatto"); and (3) Del Gatto sends and withholds payments from its New York location, *see id.* ¶¶ 28 ("All payments will be sent by check via USPS. We only have ONE official mailing address: I Do Now I Don't[,] . . . New York, NY 10036."), 38 ("the Buyer paid Del Gatto for Plaintiff's engagement ring"). These all favor finding New York to be the locus of the allegedly deceptive acts. And where the assembled facts are of this nature, the plaintiff need not have physically been in New York during the commercial conduct alleged to be able to pursue a GBL § 349 claim. *See TouchTunes*, 211 F. Supp. 3d at 633 (although some plaintiffs were outside of New York during the transactions, because plaintiffs' payments to defendants were processed in New York, "the location of the transaction" was New York); *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167–68 (S.D.N.Y. 2014) (despite being outside New

York when they interacted with defendant, plaintiffs could bring GBL § 349 claim because "defendant operated a website in New York and . . . [m]any of the relevant communications and transactions with the defendant . . . occurred on or through the website itself, which is equivalent to communicating or transacting directly with a New York address")

Polk therefore has standing to bring this claim.

### 2. Duplication

Del Gatto next moves to dismiss the GBL § 349 claim as duplicative of Polk's contract breach claim. Def. Mem. at 13. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Key here, "[a]lthough a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." *Id.*; *see Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012).

The Complaint fails to clear that bar, because its breach of contract and GBL claims are effectively identical. Both turn on the same conduct: Del Gatto's alleged failure to pay third party sellers by the 15th of the month after the sale. *See* Compl. ¶ 88 (breach of contract claim: "Del Gatto breached the Terms of Use contract by failing to pay Plaintiff and Class Members by the 15th of the month following the sale transaction . . ."); *id.* at ¶ 95 (GBL claim: "Del Gatto made material misrepresentations and statements of fact to Plaintiff and the Class about when payment would be received that resulted in Plaintiff and the Class reasonably believing that they would be paid for their property by the 15th day of the month following the completed sale of the jewelry . . . ."). Where two claims are based on the same conduct, they "are likely to involve similar injury," *Fleisher*, 858 F. Supp. 2d at 305, and such is the case here: both claims allege economic loss from Del Gatto's failure to pay Polk and the putative class, *see* Compl. ¶ 89

(breach of contract claim: "As a direct and proximate result of Del Gatto's breach, Plaintiff and Class members have suffered actual damages by failing to receive monies they are contractually owed for the sale of their jewelry."); *id.* ¶ 100 (GBL claim: "The foregoing deceptive acts, omissions, and practices . . . proximately caused Plaintiff and Class members to suffer actual damages by never receiving (or receiving late) payment for the sale of their jewelry . . . .").

Because the Complaint does not adequately differentiate between the breach of contract and GBL § 349 claims, the Court dismisses the latter as duplicative. *See, e.g.*, *Fleisher*, 858 F. Supp. 2d at 305 (section 349 claim dismissed as duplicative of breach of contract claim because injuries alleged were identical); *Esposito v. Ocean Harbor Cas. Ins. Co.*, No. 13 Civ. 7073 (SJF), 2013 WL 6835194, at *4 (E.D.N.Y. Dec. 19, 2013) (same); *In re Cablevision Consumer Litig.*, 864 F. Supp. 2d 258, 267 (E.D.N.Y. 2012) (same).

### D.     Unjust Enrichment Claim

For similar reasons, Del Gatto moves to dismiss the Complaint's final claim, for unjust enrichment. Del Gatto is correct.

"Unjust enrichment is not a catchall cause of action to be used when others fail . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* Critical here, an unjust enrichment claim is duplicative when it "simply restates elements of other claims." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014). "[C]laims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely

duplicative of their other causes of action." *Nelson v. Millercoors, LLC*, 246 F. Supp.3d 666, 679 (E.D.N.Y. 2017).

Such is the case here. Polk's unjust enrichment claim is based on the same allegations as his claim for breach of contract: Del Gatto's failure to pay him. *Compare* Compl. ¶ 88 (breach of contract: "Del Gatto breached the Terms of Use contract by failing to pay Plaintiff and Class Members by the 15th of the month following the sale transaction."), *with id.* ¶ 105 (unjust enrichment: "Del Gatto has not paid Plaintiff and Class Members for their sale of jewelry on the marketplace."). Polk concedes that these two claims "may overlap," Opp'n at 14; tellingly, he does not identify any ways in which they are distinct.

The Court therefore dismisses the unjust enrichment claim as duplicative. *See, e.g., Freedom Mortg. Corp. v. Tschernia*, 20 Civ. 1206 (AJN), 2021 WL 1163807, at *5–6 (S.D.N.Y. Mar. 26, 2021) (unjust enrichment claim dismissed as duplicative of breach of contract claim where the "theories stand or fall on the exact same facts"); *In re Columbia Tuition Refund Action*, No. 20 Civ. 3208 (JMF), 2021 WL 790638, at *9 (S.D.N.Y. Feb. 26, 2021) ("Plaintiffs' unjust enrichment claims are easily dismissed, as the claims rest on the same factual allegations as their contract claims."); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) ("Because . . . Plaintiff's unjust enrichment claim under New York law is based on the same factual allegations underlying its contract and tort claims. . . . Plaintiff's unjust enrichment claim under New York law will be dismissed as duplicative of its contract and tort claims.").

## CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss the Complaint's breach of contract claim, but grants the motion to dismiss Polk's GBL and unjust enrichment claims. The Clerk of Court is respectfully directed to terminate the motion pending at docket 16.

The Court schedules an initial pretrial conference for July 28, 2021, at 10 a.m. This conference will be held telephonically. Counsel are directed to review the Court's Emergency Individual Rules and Practices in Light of COVID-19, found at https://nysd.uscourts.gov/hon-paul-engelmayer, for the Court's procedures for telephonic conferences.

Counsel are further directed to prepare a Civil Case Management Plan and joint letter in accordance with the Court's Individual Rules, to be submitted to the Court no later than July 27, 2021, at noon. The plan should provide the completion of fact discovery by the end of October 2021. In formulating the case management plan, counsel should discuss whether, particularly as informed by the discussion herein, there are terms on which this matter can be resolved.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 23, 2021
      New York, New York